## BARLING vs. WEST and others.

*False imprisonment — Village ordinances.*

29    307
110    ᴮ351

29    307
111    � 37

1. Where a village ordinance provided that the sidewalk in front of certain stores should be *fourteen* feet wide, and that the outside *ten* feet should be of uniform grade, and kept clear of all obstructions, but the inside *four* feet were left ungraded and occupied for stairways, show tables,

etc., by the owners of said stores, and plaintiff, within said four feet in front of one of said stores, and by authority of the owner thereof, kept a stand for the sale of lemonade, etc. *Held*, that such stand was not an obstruction to the sidewalk, and plaintiff was not liable to arrest by a peace officer for keeping the same, although a crowd may have been collected in front of it, so as to obstruct the street.

2. An ordinance providing that no person should deposit on any sidewalk, or in any street in the village, any lumber or other substance which might obstruct the free passage of the same, without the written permission of a majority of the board of trustees — *held*, inapplicable to this case.

3. Village trustees were empowered by charter to enact all such ordinances "for the government and good order of the village, for the suppression of vice, for the prevention of fires, for the benefit of trade and commerce, and for the health" of the village, as they might deem expedient. *Held*, that an ordinance prohibiting the sale, without a license, at temporary stands or tables, of "any lemonade, ice-cream, cakes, pies, cheese, nuts, fruits," etc., was an unreasonable restraint of trade, and not authorized by the charter, and would not protect an officer making an arrest for a violation thereof.

APPEAL from the Circuit Court for *Green* County.

Action to recover damages from the defendants for forcibly assaulting and arresting the plaintiff without warrant, and taking him before a justice of the peace, and holding him in custody until discharged by such justice. The defendants justified the arrest on the ground that they were officers of the village of Monroe, authorized and required to enforce the laws and ordinances of the village, and that the plaintiff, at the time of the arrest, was forcibly resisting a lawful attempt by them as such officers to remove a stand or temporary counter obstructing a sidewalk in said village, at which plaintiff was engaged in selling lemonade without license, contrary to a village ordinance.

The evidence on the part of the plaintiff tended to show that the plaintiff was authorized by Treat & Co., whose clerk he was, to sell lemonade from the door of their store, on the 4th day of July, 1870; that, by a village ordinance, the sidewalk in front of that and adjoining stores was required to be fourteen feet wide, the outer ten feet to be graded and kept free from all

obstructions, and that the inner four feet was occupied by open cellar-ways with railings, or by tables and boxes on which to show goods, etc., and that plaintiff had erected a temporary counter, partly in front of Treat & Co's door, and wholly within the limits of such inner four feet, where he was offering lemonade for sale, keeping it meantime within the store; that two of the defendants (one of whom was shown to be the president and the other the marshal of the village), came along, and the president asked if that was a lemonade stand, and being told it was, said to the marshal, "it must come down," and to the plaintiff, "I will give you fifteen minutes to take it down"; and the marshal also told him he must take it down, and, upon his refusing to do so, seized hold of him and took a billy out of his pocket; that the plaintiff got loose, and being handed a pitcher which he had called for to serve lemonade in, brandished it, threatening to strike the marshal if he struck him with the billy; that the president asserted the right to arrest the plaintiff without a warrant, and ordered the marshal and the third defendant, who was a special constable, to take him dead or alive, and they forcibly seized him and dragged him over his counter, thereby throwing that down, and took him before a justice of the peace, where he was detained about half an hour, when the justice, after hearing the testimony, discharged him; and that he suffered from lameness caused by such acts of the defendants, for several days.

The testimony on the part of the defendants as to the facts of the case differed little from that on the part of the plaintiff, except that it tended to show that the plaintiff was crying his lemonade and selling some, and had a large crowd around him, which obstructed passage along the walk ; that he had no license from the trustees to sell ; and that the marshal did not draw a billy or other weapon; that he first attempted to take the plaintiff without violence, but the latter jerked away, swore at and used opprobrious language toward him, threatened to split out his brains with the pitcher, and boasted that he could

not be arrested.   There was also proof that Treat's store was on the line or a little in the street, and that there had been a footpath very near that line for many years before the store was built.

The defendants then introduced in evidence the charter of the village of Monroe, by which it appeared that the president was clothed with all the powers of a justice of the peace, for the purpose of executing the laws and ordinances of the village; that the marshal had all the powers of a constable, and, in addition, specific authority to apprehend any person in the act of committing any offense against the state or the ordinances of the village, and forthwith bring him before competent authority; that the trustees were authorized to enact such by-laws for the government of the village, and for the benefit of trade and commerce, as they deemed expedient, and had power to establish and keep in repair sidewalks, to prevent the obstruction thereof, to prevent, abate and remove nuisances, to prevent noise, disturbance and disorderly conduct, to license saloons, groceries, taverns and eating houses, and restrain the keeping of the same without license, and to require the removal of any building or other erection within the boundary of any street.

They also introduced a village ordinance establishing the width of the sidewalk where the arrest was made, and requiring the outer ten feet to be kept free from all obstructions, and that nothing should be placed on the inner four feet without written permission from the trustees; also an ordinance prohibiting any person from keeping for sale at any temporary stand, any lemonade, etc., without first obtaining a license, under a penalty of ten dollars; an ordinance prohibiting noise, disturbance or disorderly conduct, under a penalty, and authorizing the arrest of persons offending, without process; and one prohibiting the deposit of anything on sidewalks which might in any manner obstruct the free passage of the same, without written permission from the trustees.

The instructions given to the jury, so far as material to the

decision, appears in the opinion of the court. The jury gave the plaintiff a verdict for $50 damages; a motion for a new trial was denied; and the defendants appealed from the judgment entered in accordance with the verdict.

*B. Dunwiddie*, for appellant, argued that under the charter and by-laws of the village, the defendants were discharging an official duty, and the plaintiff resisting them when he was arrested; that the statement of the court relative to the plaintiff's stand being on the four-foot strip next to the building, and its instruction that the plaintiff had a legal right to maintain it there, although it may have collected a crowd that temporarily obstructed the street, assumed a fact not proved, and took from the consideration of the jury the question whether that was a highway or not; that, if a highway, the plaintiff had no right to maintain his stand there, citing *People v. Cunningham*, 1 Denio, 52½; *State v. Phillips*, 4 Ind., 515; *Weld v. Hornby*, 7 East, 199; 3 Campbell, 227; *Fowlers v. Sanders*, Cro. Jac., 446; 1 Hilliard, 580; that it being an encroachment, it was a nuisance, and liable to be summarily removed, citing *Gates v. Blincoe*, 2 Dana, 158; *Wetmore v. Tracy*, 14 Wend., 250; 1 Hilliard, on Torts, 576; that the defendants, as village officers, had the right to remove the stand as an illegal obstruction, citing *Pedrick v. Bailey*, 12 Gray, 161; *Commonwealth v. Curtis*, 9 Allen, 266; and that the court erred in its other instructions to the jury.

*H. Medbury*, for respondent, argued that the use to which the inner four feet of the sidewalk, where the arrest was made, had been put under the ordinance with the tacit consent of the trustees, made its use by the public as a public highway impossible, and it was too late for the village authorities to resume control of it, and claim rights paramount to those of the occupants of the stores, and that the ordinance relating to obstructions therefore, did not apply to the case; and that the ordinance prohibiting the sale of lemonade and other refreshments was an unlawful restraint of trade, as much so as if it applied

to dry goods, groceries and other articles of commerce not contraband, and was therefore void; but, if valid, it provided its own remedy, not a seizure of the articles, but a penalty.

COLE, J.  It appears to us that the acts of the defendants which are complained of, if justifiable at all, must be justified upon one of two grounds : either, first, because the place where the temporary lemonade stand was placed was a part of the sidewalk which was used by the public, and which the plaintiff was obstructing in an unlawful manner, so as to make it the duty of the officers of the village to remove the obstruction at once, in order that the citizens generally might have free passage there; or, secondly, that the ordinance which required the plaintiff to procure a license to sell lemonade at that place was a valid legal ordinance which the officers had a right to enforce in the manner they attempted to do in this case.  If either of these propositions can be successfully maintained, then, perhaps, the acts of the defendants in summarily arresting the plaintiff under the circumstances disclosed in the evidence might be justified ; otherwise we do not see how they can be.  The circuit court, among other things, instructed the jury that if the plaintiff, when arrested, was resisting the defendants, or either of them, while acting as officers in the lawful discharge of their duty, or if he was committing any breach of the peace, then the law authorized them to arrest him without process, and take him before a magistrate, using no more force than was necessary for that purpose.  This, of course, was equivalent to telling the jury that the acts of the defendants were justified if the plaintiff was doing anything which amounted to a breach of the peace, or was resisting the defendants while in the discharge of any legal duty.  And it is not claimed that the defendants would not have the right to remove the lemonade stand, providing it was obstructing the sidewalk in an unlawful manner.  But the circuit court further instructed the jury upon that point, that the undisputed evidence in the case

showed that the plaintiff had the legal right to retain the stand in that place, although it may have collected a crowd which temporarily obstructed the street, because it appeared that the rights of Treat & Co.,— under whose authority the plaintiff acted,— to use for that purpose the place where the stand was located, was, at the time, paramount to any right which the public had to use such place as a street. It is objected that this charge withdrew entirely from the consideration of the jury the question whether the lemonade stand was erected on the sidewalk which was used by the public, so as to be an obstruction in the public street. This may be true, but we think the charge of the court was fully warranted by the facts in the case.

The ordinance of May 4th, 1858, under which the block of stores was erected, one of which was occupied by Treat & Co. — the plaintiff's employers,—provides that the sidewalk on the west side of the square should be fourteen feet in width; the outside ten feet, or the ten feet thereof next to the traveled part of the street should be of a uniform grade, and should be kept clear of all obstructions of whatever kind, permanent or temporary, leaving the inside four feet next the stores without any grade, and to be occupied for the use of the stores. This, we think, is a fair construction of that ordinance. And it appears that the owners of the stores along the west side of the square have occupied the inside four feet for cellar ways, open and uncovered, but protected on the sides by iron railings from two and one half to three feet in height, which put out from the buildings along the margin of the cellar-ways; also, for stairways and places where tables are placed for showing goods, and for keeping boxes and barrels. And it was upon this inside four feet space, thus occupied by the owners of the stores for private use under this ordinance, that this lemonade stand was placed. This undoubtedly amounted to a permission and sanction on the part of the village authorities to the use of this inside four feet of ungraded walk in this manner

by the owners of the stores. And, after, having thus sanctioned for years such an occupation of that space for private use, we think the officers of the village had no right to treat the stand erected there as being an unlawful obstruction of the sidewalk. True, there was another ordinance produced and read in evidence, relative to obstructions to streets and sidewalks, which provided, in substance, that no person should deposit on any sidewalk or in any street in the village any lumber, wood or other substance which might in any manner obstruct the free passage of the same, without the written permission of a majority of the board of trustees. But it is very obvious that this ordinance was not intended to apply to this inside four feet, because the cellar-ways and iron railings which had been placed and erected there effectually prevented any passage over that space by the citizens.

Indeed, it is very manifest from the whole case, that the defendants did not claim the right in the first instance to remove the lemonade stand because it was an unlawful obstruction of the sidewalk, but upon another ground, which we will soon proceed to notice. So that any attempt to justify the trespass upon the ground that the lemonade stand was an obstruction to the sidewalk must, we think, be unavailing, and need not further be considered. And the charge of the court upon that point, was fully authorized by the facts established by the evidence. The charter of the village conferred upon the trustees power to enact and enforce all such ordinances, rules and by-laws "for the government and good order of the village, for the suppression of vice, for the prevention of fires, for the benefit of trade and commerce, and for the health thereof," as they might deem expedient. Section 17, chap. 48, Pr. and Local Laws of 1858. Under the power thus conferred, the trustees enacted an ordinance prohibiting, among other things, the sale, at temporary stands or tables, ". of any lemonade," etc., within the corporate limits,— with an exception not necessary to be noticed here,— without the person selling the same first obtained

a license therefor, under a penalty of ten dollars for each day or part of a day such person should so sell. The plaintiff clearly came within the prohibition of this ordinance; and, if the same is valid, we will assume for the purposes of this case that it would justify the defendants in attempting to enforce it in the manner they did. But we are clearly of the opinion that the ordinance itself, so far as it attempts to prohibit the sale of "lemonade, ice cream, cakes, pies, cheese, nuts, fruits," etc., without a license first obtained therefor, is in contravention of common right, is unreasonable, and must be declared void.

It is a perfectly well established principle of law, that a municipal by-law or ordinance must not be inconsistent with or repugnant to the constitution and laws of the United States or of this state; that it must be reasonable, and in harmony with the principles of the common law. *Hayes v. The City of Appleton*, 24 Wis., 542; *Dunham v. Trustees of Rochester*, 5 Cowen, 462; *Austin v. Murray*, 16 Pick., 121; *The Mayor, etc., of Mobile v. Yuille*, 3 Ala., 137; and authorities cited. Now the sale of lemonade, ice cream, cakes, fruit, etc., is a perfectly lawful trade, and its restraint or regulation is not demanded by the public welfare; nor for the "good order of the village"; nor "for the benefit of trade and commerce"; nor for the public health of the citizens. Why, then, should the business be prohibited, or a person engaged in it be required to procure a license to carry it on, as if it were immoral or prejudicial to the public health, or to the good order of society? It seems to us that the ordinance is an invasion of private rights and an unwarranted interference with an entirely innocent and lawful business. In the case of *Hayes v. The City of Appleton, supra*, the chief justice remarks that a municipal by-law or ordinance "must be such as prudence and reason require, not unnecessarily prejudicial to private rights and interests, and not inconsistent with the laws of the state." And in *Austin v. Murray, supra*, WILDE, J., observes that "the illegality of a by-law is the same, whether it may deprive an individual of the use of a

part or of the whole of his property; no one can be so deprived unless the public good requires it. And the law will not allow the right of property to be invaded, under the guise of a police regulation for the preservation of health, when it is manifest that such is not the object and purpose of the regulation."

In the present case, the ordinance is a clear and direct infringement of the rights and privileges of the individual citizen who may wish to sell lemonade, cakes, fruit, etc., within the corporate limits of the village of Monroe, and is wholly unauthorized and most unreasonable. Nor can the power of the trustees to enact the ordinance be sustained under the taxing power. The ordinance was doubtless adopted with a view to revenue. But the power of raising money by taxation to defray the necessary expenses of the corporation, to meet its debts and various liabilities, is fully conferred in other provisions of of the charter. And the right to enact and enforce proper ordinances does not imply or include the right to charge a license for engaging in a business which is perfectly innocent, and sanctioned by the general laws of the state. If there were any facts showing that this ordinance, requiring a license to sell lemonade, was essential for the health and good order of the village, it was incumbent upon the defendants to prove them on the trial. *Hayes v. The City of Appleton.* We are unable to conceive of any reason why the sale of such an innocent drink should be prohibited or restrained. The ordinance must therefore be declared void, and consequently would afford no justication for the acts of the defendants.

These remarks dispose of the case.

*By the Court.*—The judgment of the circuit court is affirmed.