CITY OF ST. PAUL *vs.* FREDERICK W. TRAEGER.

September 19, 1878.

**Ordinance forbidding Sale of Vegetables without License.**—The provisions of the charter of the city of St. Paul, as found embodied in Sp. Laws 1874, *c.* 1, confer upon its common council no authority to pass an ordinance prohibiting " every farmer, gardener or person producing vegetables" from selling the same in and along the streets, without first procuring an annual license from the city authorities, and paying therefor into the city treasury the sum of twenty-five dollars. Such authority is not included under a power " to establish public markets and other public buildings, and make rules and regulations for the government of the same, to appoint suitable officers for overseeing and regulating such markets, and to restrain all persons from interrupting or interfering with the due observance of such rules and regulations."

Complaint was made against the defendant, in the municipal court of the city of St. Paul, for selling vegetables on a public street of that city, in violation of an ordinance of the city, which provides that " every farmer, gardener or person producing vegetables shall not sell the said vegetables in, upon or along the public streets or highways in the city of St. Paul, without first having obtained a license so to do from the city clerk, as other licenses are procured, for which license said person, or persons aforesaid shall pay into the city treasury the sum of twenty-five dollars for one year, always ending on the first Thursday of May in each year, and no fractional license shall be given, and said license shall only permit the sale of vegetables away from the public market after ten o'clock of any day." The defendant pleaded not guilty, with a special plea to the effect that he was not a resident of the city, but lived in the town of McLean, and more than a mile beyond the city limits; that he was a farmer and gardener, living on and cultivating his own land, and raising vegetables such as are described in the complaint; that as such farmer and gardener, he has been engaged in contracting, from day to day, within the city, for the sale and delivery

of vegetetables so raised by him and no other, and delivering such vegetables within the city on the day following that on which they were contracted for; that in carrying on his business, it is necessary to ascertain, before gathering the vegetables, the kinds and quantity required by each customer, and the amount so required is on the next day gathered and delivered to the purchaser; that all the vegetables mentioned in the complaint were so ordered and purchased, and afterwards gathered and delivered to fill the orders; and that he has never sold any vegetables except those so raised by him on his farm beyond the city limits. He admits that he has never procured a license from the city to sell his said farm products, and says that the ordinance on which the complaint is founded is in restraint of trade, is unauthorized by law, and wholly void.

The court found this plea to be true in fact, but held it to be insufficient in law as a defence, and convicted the defendant, and imposed the sentence prescribed by the ordinance, from which judgment he appealed.

*Smith & Egan*, for appellant.

*W. P. Murray*, for respondent.

The ordinance is expressly authorized by the charter, (see the sections referred to in the opinion,) and, if not, is within the implied powers of the charter. Dillon Mun. Corp. §§ 250, 329. The common council, having supervision and control of the streets, may fix the terms on which merchandise, etc., may be sold therein, or may prohibit such sale altogether, if needful to the good order of the city. Dillon Mun. Corp. § 291; *Milwaukee & St. Paul Ry. Co.* v. *Crawford County*, 29 Iowa, 123.

The power to establish and regulate public markets confers the power to prevent sales elsewhere. The prohibition to sell at other times and places is naturally included in the general power to pass by-laws regulating public markets, and is among the ordinary regulations of a city police. Otherwise no useful purpose could be effected by such grant of power.

Dillon Mun. Corp. § 319, and cases cited; *Davenport* v. *Kelly*, 7 Iowa, 102; *Ash* v. *People*, 11 Mich. 347; *City of St. Louis* v. *Jackson*, 25 Mo. 37; *City of St. Louis* v. *Weber*, 44 Mo. 547; *Bush* v. *Seabury*, 8 John. 327; *Village of Buffalo* v. *Webster*, 10 Wend. 100; *Winsboro* v. *Smart*, 11 Rich. (So. Car.) Law, 551. Such ordinances are reasonable, proper, and not in restraint of trade. *City of St. Paul* v. *Colter*, 12 Minn. 41; *Nightingale, Petitioner*, 11 Pick. 168; *Com.* v. *Rice*, 9 Met. 253; *Trustees of Rochester* v. *Pettinger*, 17 Wend. 265; and not in conflict with any general law of the state.

CORNELL, J. The ordinance, for a violation of which defendant was convicted, purports to be an amendment of section 2 of an ordinance in relation to markets, and, as amended, its provisions are as follows: "Every farmer, gardener, or person producing vegetables, shall not sell the said vegetables, in, upon or along the public streets or highways in the city of St. Paul, without having first obtained a license so to do from the city clerk, as other licenses are procured, for which license said person or persons aforesaid shall pay into the city treasury the sum of $25 for one year ending on the first Thursday of May in each year; and no fractional license shall be given; and said license shall only permit the sale of vegetables away from the public market after 10 o'clock of any day."

It is apparent that the provisions of this section are founded upon the assumption that the common council, under the charter, possesses the power to license the pursuit of the particular calling or business mentioned, in and along the streets of the city, and to prescribe, as an incident thereto, when it may be followed, what sum shall be paid for the privilege, and also to prohibit the business entirely without a license, as an efficient means for the protection and enjoyment of the power itself. The ordinance is in entire harmony with this view and no other. It was not passed, as suggested by counsel, by virtue of any power of supervision and control over the streets, because powers of that character are conferred for

the sole purpose of putting and preserving the public streets
in a fit and serviceable condition, as such, by keeping them
in repair and free from all obstructions and uses tending in
any way to the hinderance or interruption of the public travel,
and to that end alone can they be exercised.   The ordinance
in question has no such object in view.   On the contrary, it
expressly authorizes the use of the public streets for the pur-
poses of the licensed traffic during that portion of each day
when ordinarily the travel is the greatest, and when such
traffic would be most likely to interfere with the free and
uninterrupted passage of vehicles and footmen, and it contains
no provisions in any way restricting, or calculated to regulate,
the manner in which the license business shall be conducted
so as to occasion the least public inconvenience.   It cannot be
claimed that it was enacted in the exercise of any police power
for sanitary purposes, or for the preservation of the good
order, peace or quiet of the city, because, neither upon its face,
nor upon any evidence before us, does it appear that any pro-
vision is made for the inspection of any articles sold or offered
for sale under the license, or for preventing the sale of any
decayed or unwholesome vegetables, nor is there any restraint
or regulation whatever imposed upon the conduct of the busi-
ness during the time it is permitted to be prosecuted.   The
annual sum exacted for the license is manifestly much in
excess of what is necessary or reasonable to cover the expenses
incident to its issue.   The business itself is of a useful char-
acter, neither hurtful nor pernicious, but beneficial to society,
and recognized as rightful and legitimate, both at common
law and by the general laws of the state.   No regulations
being prescribed in reference to its prosecution under the
license, there could be little, if any, occasion for the exercise
of any police authority in supervising the business or enforcing
the ordinance, and no cause for any considerable expense on
that account.   In view of these facts, it is quite obvious that
the amount of the license fee was fixed with reference to
revenue purposes, which it was the main object of the ordi-

nance to promote by means of a tax imposed upon the particular employment or pursuit, through the exercise of its power over the subject of granting licenses. *Mays* v. *Cincinnati*, 1 Ohio St. 268.

Such being the nature of the ordinance, and the power asserted in its passage, the question arises, whether, under the provisions of the charter of the city of St. Paul in force at the time of its passage, which provisions are found embodied in the consolidated act of 1874, (Sp. Laws 1874, *c.* 1,) the common council possessed the particular power which they have thus assumed to exercise?

Under the general rule of construction applicable to municipal charters, the existence of powers of a legislative character must be shown by an express grant, or as incidental and necessary to the proper enjoyment and exercise of such as are expressly conferred. Nothing outside or beyond this can be taken by intendment or implication. *City of St. Paul* v. *Laidler*, 2 Minn. 159 (190;) *Dunham* v. *Trustees of Rochester*, 5 Cow. 462. And when, as in this case, the ordinance which is sought to be sustained operates in restraint of an occupation or pursuit useful in its character, and which is so recognized at common law and under the laws of the state, it is especially necessary to show that the authority for its passage has been expressly or otherwise unequivocally conferred. Dillon Mun. Corp. § 291 and note.

Furthermore, if, as in this case, the charter confers, in general terms, upon the common council, authority to pass ordinances for certain designated general purposes connected with the good order and government of the municipality, which is followed by a provision, in the same section containing the grant, declaring in terms that such ordinances, etc., "shall have the force of law, provided they be not repugnant to the constitution and laws of the United States or of this state," and that, for such purposes, said council "shall have authority by ordinances, resolutions or by-laws," to do, ordain and enact various enumerated things in the way of municipal control,

regulation, restraint, prevention, granting licenses, etc., embracing, as in this instance, forty-one distinct specifications, thereby showing that the legislative mind was fully directed to the different matters concerning which municipal authority was intended to be given, it is but reasonable to conclude that the exact scope and extent of municipal power and authority conferred must be found in these specific enumerations rather than the general grant itself—that the latter is restricted and limited by the former.

Following these general canons of interpretation, there can be but little difficulty in determining the question as to the validity of the ordinance under consideration. Subdivision eighteen, section three of chapter four of the charter (Sp. Laws 1874, *c.* 1, p. 33, § 3,) under which in particular the power claimed by respondent is asserted, confers authority in terms "to establish public markets and other public buildings, and make rules and regulations for the government of the same; to appoint suitable officers for overseeing and regulating such markets, and to restrain all persons from interrupting or interfering with the due observance of such rules and regulations." This phraseology is so precise and specific as to leave little if any room for construction to arrive at the meaning and intention of the legislature in making the grant. The statute is its own best expositor. The power "to establish and make rules," etc., here given, applies both to "public markets" and to "other public buildings." It is the same in each. The use of the word *other* shows that markets was used in a restricted sense, to designate public buildings erected and devoted to the use of receiving, for sale and purchase, such marketable articles for daily use and consumption as might be wanted to supply the inhabitants of the city. This, of course, would include the sites for the buildings and grounds adjacent, used for market purposes.

To establish a public market, in this sense, is to designate and provide, by purchase or otherwise, a site or place for the purchase and sale of provisions and articles of daily consump-

tion by all who may desire to repair thither for that purpose, to erect thereon a suitable building adapted to the purpose, and to dedicate the same to such use, for the benefit of the public or the inhabitants of the municipality wherein it is located. The authority which is here given "to make rules and regulations" for such markets or other buildings is not a general and unrestricted one in relation thereto; but it is limited and confined to such as pertain solely to their government; to which end, overseers may be appointed for their enforcement, and "to restrain all persons from interrupting or interfering with the due observance of such rules and regulations." Under such authority, any reasonable system of police regulations may be adopted, providing for the safety and preservation of the property itself, its convenient use and beneficial enjoyment for the purposes for which it is intended, for the maintenance of good order, and, in case the building is a market, such further rules as may tend to insure honest dealings between buyer and seller, and guard against fraud and imposition by the use of false weights, the sale of unwholesome food, and such like evil practices. But it would not be allowable, under the color of such a limited authority, for the council to prescribe regulations in respect either to the use of the streets of the city, or the dealings or transactions of any of its citizens or other persons outside and beyond the established local limits of any of its public markets or other public buildings. A license or permission given to a farmer, upon payment of twenty-five dollars into the city treasury, to sell and deliver his vegetable products for a year to a customer living on a street at a distance away from the established public market, cannot, in any just sense, be regarded as a regulation pertaining to the government of such market.

That the power to license, regulate or restrain the particular business aimed at by the ordinance in question is not covered by this subdivision of section three, is made further apparent by reference to the other specifically enumerated powers therein contained. We find there given express au-

thority to license and regulate various kinds of business and employments, including "butchers' shops and butchers' stalls, venders of butchers' meat;" also power at any time "to revoke any license granted, for malconduct in the course of trade," and "to regulate and restrain the sale of fresh or butchers' meat, within the corporate limits of the city," and, "to punish or restrain the forestalling of poultry, game, eggs or fruit, within said city." If the power "to establish public markets" included an authority to license, regulate or prohibit any kind of business away from the locality of the market, it certainly covered that of vending fresh meats, and yet it was deemed necessary to confer it in express terms in that matter, thereby excluding the inference that any such authority could be exercised under the provision in relation to markets. It also appears that although the council is expressly authorized to license and regulate various trades and callings, and to restrain them if not licensed, there is no provision whatever for licensing hucksters, or the producers and venders of vegetables, or for preventing the sale and delivery of such products without a license elsewhere than at the public markets. This is a significant fact, indicating a legislative intent to withhold all such power. The ordinance cannot, in our judgment, be sustained under the clause relating to the establishment of markets, or any of the provisions of section 3, chapter 4, of the charter. *Dunham* v. *Trustees of Rochester*, 5 Cow. 462; *Bethune* v. *Hughes*, 28 Ga. 560; *Caldwell* v. *Alton*, 33 Ill. 416; *Bloomington* v. *Wahl*, 46 Ill. 489; *Burling* v. *West*, 29 Wis. 307. The question whether and how far, under the charter, the use of the streets of the city may be prohibited to hucksters and others for purposes of traffic, need not be considered, for the ordinance is not one of that character.

Judgment reversed.