THE CITY OF CHICAGO

*v.*

JOSEPH BARTEE.

*Filed at Ottawa May 14, 1881—Rehearing denied September Term, 1881.*

   1.  MUNICIPAL CORPORATION—*power to require milk dealer to take out
license.*   Under the 41st subdivision of section 62 of the general Incorpora-
tion law of 1872, a city incorporated under that act has the power to pass an
ordinance making it unlawful for any person to sell, expose for sale, or
deliver milk from any wagon, cart or other vehicle, within its limits, without
first procuring a license, and to provide a punishment for its violation.

   2.  PEDDLER—*what constitutes.*   The term "peddler," in the 41st subdi-
vision of section 62 of the general law of 1872 for the incorporation of cities
and villages, is used in its general and unrestricted sense, and fully embraces
persons engaged in going through a city, from house to house, and selling
milk in small quantities to different persons, and this though they may have
regular customers to whom they daily sell milk.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Criminal Court of Cook county; the Hon. John G. Rogers, Judge, presiding.

Mr. Julius S. Grinnell, for the appellant:

The city has power and authority, under its general police powers, to regulate the sale of milk, provide for its inspection, and prevent the sale of or dealing in impure, adulterated or unwholesome milk. Dillon on Mun. Corp. sec. 95; *Harrison* v. *Mayor of Baltimore*, 1 Gill, 276.

The power to license as well as tax this class of business is specifically granted by the charter to the common council. See 41st subd. sec. 62 of gen. Incorp. act, 1872.

Whether or not this ordinance is reasonable, is exclusively a question for the court. To arrive at a correct decision whether the by-law be reasonable or not, regard must be had to its object and necessity. *Vandine, Petitioner, etc.* 6 Pick. 187; *Commonwealth* v. *Stoddard*, 2 Cush. 562.

Mr. W. B. Cunningham, for the appellee:

Corporations have no powers but those expressly granted, or necessarily implied, by the act of incorporation, or those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Dillon on Mun. Corp. (2d ed.) vol. 2, p. 173; *Spaulding* v. *Lowell*, 23 Pick. 71; *Petersburg* v. *Metzger*, 21 Ill. 205; *Betts* v. *Menard*, 11 id. 395; *New London* v. *Brainard*, 22 Conn. 551; *Stetson* v. *Kempton*, 13 Mass. 272; *Hodge* v. *Buffalo*, 2 Denio, 110; *Williard* v. *Killingsworth*, 8 Conn. 247.

And courts adopt a strict construction, and powers must be clearly given. *Minturn* v. *Larne*, 23 How. 435; *Thompson* v. *Lee Co.* 3 Wall. 320; *Clark* v. *Davenport*, 14 Iowa, 495; *Merriam* v. *Moody Exrs.* 25 id. 163; *Leonard* v. *City of Canton*, 35 Miss. 189; *Lafayette* v. *Cox*, 5 Ind. 38.

A corporation must show a grant, either in terms or by necessary implication, for all the powers it attempts to exer-

cise, and especially must this be done when it claims the right, by taxing or otherwise, to deprive individuals of their property without their consent.    *Mix* v. *Ross et al.* 57 Ill. 135; *Sharp* v. *Spier*, 4 Hill, 76.

And to this effect are adjudged cases, without exception. *Ham* v. *Miller*, 20 Iowa, 450; *McInery* v. *Reed*, 23 id. 410; Blackwell on Tax Titles, (ed. of 1864,) ch. 31, p. 448; *Bank* v. *Chillicothe*, 7 Ohio, 31; *Collins* v. *Hatch*, 18 id. 523; *Shear* v. *Hill*, 4 Hill, (N. Y.) 329.

The city council can not license milk dealers, because the charter does not enumerate them in the list of those that may be licensed.    2 Coke, 58; *Hyman* v. *Bayne*, 83 Ill. 264.

The power to make "by-laws relative to hucksters, grocers and victualing shops," does not authorize the corporation to exact a license from persons carrying on such business. Nor does the general power "to pass prudential by-laws, not inconsistent with the laws of the State," confer the authority to demand a license.    1 Dillon on Mun. Corp. 396; *Dunham* v. *Rochester*, 5 Cow. (N. Y.) 462; *Commonwealth* v. *Stoddard*, 2 Cush. 562; *Mays* v. *Cincinnati*, 1 Ohio, 268.

The license is not authorized by power given to license peddlers.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant brought an action against appellee to recover a penalty for violating an ordinance of the city.    The ordinance claimed to have been violated is this:

"SEC. 2.    It shall be unlawful for any person or persons, within the city of Chicago, to sell, expose for sale, or deliver milk from any wagon, cart or other vehicle, unless he or they shall first have obtained a license to carry on such business. The mayor is hereby authorized to issue a license for such purpose to any person applying to him in writing for the same.    Such application shall specify the number of wagons or other vehicles intended to be employed in the sale or

delivery of milk, and the applicant shall pay into the city treasury, as a license fee, the sum of $5 per annum for each and every such wagon or other vehicle. The number of vehicles authorized by any license to be so employed may be enlarged upon a further written application to the mayor, and the payment of the above named sum of $5 for every such additional vehicle."

Another section of the ordinance imposed a penalty for a violation of the second section, and provided for its recovery.

The case was tried on an appeal to the Criminal Court of Cook county, on this agreed statement of facts: That the defendant was a milk dealer in the city of Chicago, and continued to follow his business in said city after April 1, 1880, prior to the issuing of summons for violation of said ordinance, without paying $5 for each wagon used by him in said business; that he had no license after April 1, 1880, to follow his vocation of milk dealer; that he had, during that time, after April 1, 1880, employed several wagons in delivering milk to his customers at their houses or places of business, in small quantities, in the regular course of such business of delivering milk from said wagons, and selling the same to regular customers and others; that the city of Chicago was incorporated under act of 1872, for incorporation of cities and villages, etc., and which was adopted by the city May 3, 1875.

On these facts the Criminal Court found in favor of defendant, and against the city. An appeal was prosecuted to the Appellate Court, where, on a trial, the judgment was affirmed, and the case comes to this court by appeal on a certificate of that court, and a reversal is urged.

It is insisted in favor of affirmance, that the ordinance is void for want of power to adopt it. It is on the other hand claimed, that there is ample power to maintain it under either of two provisions of the charter: first, under the police power, as found in the 66th and 68th subdivisions of

section 62 of the city charter; and, second, under the 41st sub-division of the same section, which confers power "to license, tax, regulate, suppress and prohibit hawkers, peddlers, pawn brokers, keepers of ordinaries,   *  *  *   and to revoke such license at pleasure."

In the view we take of the case, we deem it unnecessary to determine whether the ordinance may be sustained under the police power conferred by the charter. We are of opinion that the power is conferred by the 41st subdivision of section 62. If appellee was a peddler, or engaged in the occupa-tion of a peddler, then the power was ample, and the ordi-nance must be sustained. The term "peddler," is defined by high authority to be one who deals in small or petty things, and this coincides with the popular meaning of the word, and we must conclude, as required by the canons of interpreta-tion, that such is the sense in which it is employed in the charter. The term "peddler" is used in the charter in its general and unrestricted sense, and fully embraces persons engaged in going through the city from house to house, and selling milk in small quantities to different persons; nor can it matter that appellee had regular customers to whom he daily sold his milk.

Being one of the kinds of peddlers embraced in the 41st subdivision of the 62d section, and it being within the undoubted power of the General Assembly to confer the power to license, the city had ample power to adopt the ordinance requiring appellee to obtain and pay for a license to ply his business, and failing to do so, he became liable to the penalty, and the Appellate Court erred in affirming the judgment of the Criminal Court. The judgment of the Appellate Court is reversed, and the cause remanded.

*Judgment reversed.*

Mr. Justice Mulkey, dissenting:

I dissent *in toto* both to the reasoning and conclusion reached by a majority of the court in this case.

Appellee was prosecuted under an ordinance prohibiting the business of selling, exposing for sale, or delivery of milk from wagons or other vehicles without a license from the city for that purpose. It is conceded there is no power in the city charter to tax such a business, but the opinion of the court seems to proceed upon the theory that the acts admitted to have been done by appellee amount to peddling, and that inasmuch as the charter does authorize the city to prohibit, by ordinance, peddling without a license therefor, the defendant should be convicted for that offence. I confess I am unable to see the force of such reasoning.

There are two sufficient answers to the position thus assumed : First, it is manifest that the object of the city in adopting the ordinance in question was simply to impose a tax on milk dealers, and not to prohibit peddling. Second, the prosecution instituted against appellee was not founded upon the ordinance prohibiting peddling.

The ordinance under which this prosecution was commenced, does not contain either the term peddling or peddler, nor has it the slightest allusion to that subject. It is directed solely against the business of selling milk. It is clear that if the ordinance were valid, one might be convicted under it for a single transaction or sale, where there could be no pretence that the offender had been guilty of peddling. In such a case as that, the court, as all must admit, would be bound to hold the ordinance invalid, and there consequently could be no recovery, although the proofs brought the defendant within its express provisions. And it will hardly be seriously maintained by any one that an ordinance may be valid to-day and invalid to-morrow, or that its validity or invalidity can in any sense be made to depend upon the

proofs in a particular case; and yet such seems to be the effect of the present decision.

For the reasons stated, I am clearly of opinion that the Criminal Court properly held the defendant not liable under the ordinance, and consequently the Appellate Court committed no error in affirming its judgment.

DICKEY and SCHOLFIELD, JJ.:    We concur with Mr. JUSTICE MULKEY.