LOUIS LITTLEFIELD V. STATE OF NEBRASKA.

FILED OCTOBER 16, 1894.   No. 6995.

1. **Municipal Corporations:** EXERCISE OF POWER TO LICENSE A BUSINESS OR OCCUPATION. Where authority is conferred upon a municipal body to license and regulate a particular business or occupation as a sanitary measure, such power must be exercised as a means of regulation only, and not as a means of producing revenue.

2. ———: ———: SALE OF MILK. Authority is conferred by its charter upon the city of Omaha to license and regulate the production and sale of milk within its limits, and it may lawfully exact a reasonable license fee from all persons engaged in such business.

3. ———: ———: REASONABLENESS OF FEE. While the courts have power to inquire into the reasonableness of the fee exacted in the exercise of the power to regulate, a considerable latitude will be allowed for the exercise of legislative discretion over the subject.

4. **License:** POLICE REGULATIONS. Such a measure will be upheld by the courts when plainly intended as a police regulation and the revenue derived therefrom is not disproportionate to the cost of issuing the license and the regulation of the business to which it applies.

5. ———: REASONABLENESS OF FEE: VALIDITY OF ORDINANCE. Where such an ordinance is clearly within the general powers of a municipal body it is presumed to be reasonable, and the judicial power of the state will not be exercised to declare it void, unless from its inherent character, or by proofs adduced, it is shown to be unreasonable.

ERROR to the district court for Douglas county. Tried below before SCOTT, J.

The opinion contains a statement of the case.

*Estabrook & Davis,* for plaintiff in error:

The license fee cannot be sustained as an exercise of the

taxing power. (Dillon, Municipal Corporations, sec. 357; *Templeton v. City of Tekamah*, 32 Neb., 545.)

The requirement of a license fee cannot be upheld as an exercise of police power. (Tiedeman, Municipal Corporations, sec. 123; *City of Leavenworth v. Booth*, 15 Kan., 627; *Mühlenbrinck v. Long Branch Commissioners*, 13 Vroom [N. J.], 364; *City of St. Paul v. Traeger* 25 Minn., 248.)

*George H. Hastings, Attorney General, E. J. Cornish,* and *W. S. Shoemaker,* for the state, cited: Tiedeman, Limitations of Police Power, p. 274; *People v. Mulholland,* 82 N. Y., 324; *City of Chicago v. Bartee,* 100 Ill., 57; *Kinsley v. City of Chicago,* 16 N. E. Rep. [Ill.], 260; 1 Dillon, Municipal Corporations, pp. 441, 442; 2 Beach, Public Corporations, sec. 1255; *City of Cincinnati v. Buckingham,* 10 O., 261; *City of Cincinnati v. Bryson,* 15 O., 643.

POST, J.

The plaintiff in error was by the district court for Douglas county found guilty of the violation of an ordinance of the city of Omaha, which prohibits the selling, or keeping for sale therein, of milk by any person without a license. From the judgment against him he has prosecuted proceedings in error to this court. The proposition upon which he relies for a reversal of the judgment of the district court is that the ordinance in question, in so far as it exacts the payment from him of a license fee of $10, is in excess of the authority conferred upon the city, and therefore void. The ordinance is too voluminous to be set out at length in this opinion, but its scope and character are indicated by the title thereof, to-wit, "An ordinance regulating the production and sale of milk in the city of Omaha and providing for the appointment of a milk inspector and prescribing his duties." The provision thereof with respect to license fees is as follows: "Every person, firm, or corporation producing milk or cream for sale and selling the same in the city of Omaha,

and every person, firm, or corporation selling or offering for sale, or keeping for sale, any milk or cream from any milk depot, store, or other establishment or place of business in the city of Omaha, and every person selling or delivering milk from any wagon or other vehicle within the city of Omaha shall pay a license fee of $10 per year; *Provided,* That when more than one wagon or other vehicle is used by any person, firm, or corporation in the delivery of milk or cream in the city of Omaha an additional license fee of $10 per year shall be paid for each additional wagon; *And provided further,* That any person owning only one cow and delivering milk by hand shall pay a license fee of $2 per year, and any person owning only two cows and delivering milk by hand, or any person delivering milk by hand from any milk depot, store, or other establishment or place of business shall pay a license of $5 per year."

The sections of the city's charter which relate to the subject under consideration are: Section 41, chapter 12a, Compiled Statutes, entitled "Cities of the Metropolitan Class," by which it is provided that "the mayor and council shall have power  *  *  *  to provide for, license, and regulate the inspection and sale of meats, flour, poultry, fish, milk, vegetables, and all other provisions or articles of food exposed or offered for sale in the city," etc.    Section 30, which provides for a board of health which "shall have control and supervision of meats, food, drinks, and the inspection, condemnation, use, sale, and disposition thereof. *  *  *  Inspectors of meats, milk, food, and of any and all other matters and things relating to the sanitary condition of such city shall be under the control and direction of said board of health."    Section 79, providing for a system of taxation, among other purposes named, "for payment of the expenses of the board of health not exceeding one mill on the dollar valuation in any one year, taxes levied for said purpose to constitute a special fund therefor," etc.

19

In the able brief submitted by counsel for the plaintiff in error they conceded the power of the city by ordinance to prescribe needful and proper rules for the inspection and sale of milk and like commodities therein as a reasonable sanitary measure. They also admit the power of the city to require dealers in such commodities to procure license and to exact a reasonable fee therefor; but they argue that it cannot require the payment of a fee in excess of the cost of issuing the license, on the ground that such a demand is unreasonable and therefore prohibited both by its charter and the general rules defining the powers of municipal bodies. In support of that contention we are referred to Tiedeman, Limitations of Police Power, 101; *City of Leavenworth v. Booth*, 15 Kan., 627; *City of St. Paul v. Traeger*, 25 Minn., 248, and *Mühlenbrinck v. Commissioners of Long Branch*, 42 N. J. Law, 364. The doctrine of those authorities and many others which we have examined is that the legislature cannot authorize the power of taxation under the pretence of sanitary regulations or other exercise of the police power of the state in the interest of the public health or safety. That principle was distinctly recognized by this court in the recent case of *Smiley v. MacDonald*, 42 Neb., 5, in which the test is said to be, whether the measure in question has some relation to the public welfare and whether such is in fact the object sought to be attained; but by taxation, as the term is here employed, is meant the providing of revenue for the ordinary expenses of state or municipal government. It does not follow, therefore, that an ordinance will be held void simply because it provides for a fund to be derived from license fees. Such a measure will be upheld by the courts whenever it appears to have been designed to promote the welfare of the public, and the revenue derived therefrom is not disproportionate to the cost of its enforcement and the regulation of the business to which it applies (See Cooley, Taxation [2d ed.], 598; Tiedeman, Limitations of Police Power, 101; 2 Beach, Public Cor-

porations, sec. 1255; *North Hudson R. Co. v. City of Ho-boken*, 41 N. J. Law, 71; *People v. Mulholland*, 82 N. Y., 324; *Van Baalen v. People*, 40 Mich., 258; *City of Chicago v. Bartee*, 100 Ill., 57; *Kinsley v. City of Chicago*, 124 Ill., 359.) As said by Professor Tiedeman in the section above cited, "What is a reasonable sum must be deter-mined by the facts of each case; but where it is a plain case of police regulation, the courts are not inclined to be too exact in determining the expense of procuring the li-cense as long as the sum demanded is not altogether un-reasonable;" and in section 123, Tiedeman, Municipal Cor-porations, the same author says: "And although it is a judicial question whether the sum exacted is a reasonable one, a wide latitude is given to the exercise of legislative discretion in the determination of the amount of the license fee." In some of the cases cited the courts have taken notice, without proof, that the fee exacted is unreasonable. For instance, in *North Hudson R. Co. v. City of Hoboken*, *supra*, the court declared as a matter of law that a fee of $15 for each one-horse car and $25 for each two-horse car was unreasonable. On the other hand, in *People v. Mul-holland* the fee named was not less than $5, and not more than $10, to be fixed by the mayor, for each wagon used in selling milk, yet it was held reasonable; and in *Kinsley v. City of Chicago* the ordinance which was upheld imposed a license fee of $15 per year upon all vendors of meat.

In the case at bar there is a stipulation of record by the plaintiff in error to the effect that he was at the time named engaged in selling milk, as charged, in the city of Omaha without license; and that in case the ordinance, which ex-acts from him a fee of $10, is held to be valid, judgment shall be entered as on a plea of guilty. It will thus be observed that the case is submitted to us as if upon de-murrer to the information. When the measure, which is the subject of the ordinance, is, as in this instance, clearly within the general powers of the city, the presumptions are

in favor of its reasonableness, and the judicial power of the state cannot be invoked for the purpose of declaring it void unless from the inherent character thereof, or from proofs adduced, it is shown to be in fact unreasonable. (See *State v. City of Trenton*, 53 N. J. Law, 132; *Van Hook v. City of Selma*, 70 Ala., 361; *Atkins v. Phillips*, 26 Fla., 281; *City of St. Louis v. Weber*, 44 Mo., 547; *Commonwealth v. Patch*, 97 Mass., 221; Parker & Worthington, Public Health & Safety, 312.) By an application of that rule to the case before us we reach the conclusion that the ordinance assailed is a reasonable exercise of the power conferred by law upon the city.

But it is suggested by counsel that the rule as here stated is inapplicable to this case, since by provision of the constitution all license money belongs to the school fund of the city, the fees provided for cannot be applied to the purpose of enforcing the ordinance, and are, therefore, unnecessary and unreasonable. In this connection they refer also to the provision contained in section 79 of the city's charter for the levy of a tax to defray the expenses of the board of health, and which is to constitute a special fund for that purpose. The constitutional provision referred to is section 5 of article 8, which reads as follows : "All fines, penalties, and license moneys arising under the general laws of the state shall belong and be paid over to the counties, respectively, where the same may be levied or imposed, and all fines, penalties, and license moneys arising under the rules, by-laws, or ordinance of cities, villages, towns, precincts, or other municipal subdivision less than a county shall belong and be paid over to the same respectively. All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of common schools in the respective subdivisions where the same may accrue." If that provision applies to ordinances like the one here involved, and which for the purposes of the present controversy may be conceded, it follows that the cost of enforcing

the ordinance and regulating the business of producing and selling milk must be paid from funds provided by taxation instead of by license fees. But of what avail is that fact to the accused in this prosecution? Upon what ground can he be heard to complain because the fees realized are not applied directly to relieve the burdens which are by means of his business imposed upon the city? We take notice that provision is made by statute for the levy of a school tax by cities of the metropolitan class not exceeding two per cent annually upon their assessed valuation. To the extent that the school fund of the city is enriched by the proceeds of fines and licenses is the necessity for taxation diminished. The fact, therefore, that the expenses incident to an enforcement of the ordinance are payable out of a fund provided by taxation is a matter of no consequence either to the accused or the city. That view is in accordance with the rule stated by Professor Tiedeman, as will be observed from the foregoing citations. It follows that the judgment of the district court is right and should be

AFFIRMED.