STAMPS *v.* BURK.

Opinion delivered July 1, 1907.

MUNICIPAL ORDINANCE—REGULATION OF SALE OF MEATS—REASONABLENESS.—
If the authority conferred upon cities and towns "to establish and regulate markets" confers upon them authority to require a license of all persons selling fresh meats in the city or town, an ordinance which requires such persons to take out a license and pay therefor $12.50 per quarter is not a reasonable regulation and is void.

Error to Lafayette Circuit Court; *George W. Hays,* Judge; affirmed.

*Warren & Hamiter,* for appellant.

1. The town has the power to establish and regulate markets, and the power to regulate implies the power to im-

pose a license fee for the purposes of such regulation. Kirby's Digest, § 5438; McQuillin's Mun. Ord. § § 4c7, 418 and notes; 41 Ark. 485; 64 Ark. 152.

2. The ordinance is not in conflict with the Old Soldier's Act, Kirby's Digest, § 6880, which applies to hawking and peddling. Moreover, that act is itself void, being in plain violation of the Constitution. Art. 2, § 18, Const. 1874; art 4, § 2 U. S. Const., 43 Ark. 180; Bishop on Stat. Cr. § § 33, 34, 152; Black, Const. Law. 4.

*R. L. Montgomery* and *Walter J. Terry,* for appellee.

1. The ordinance 52 is *ultra vires.* The statute relied on by appellant, Kirby's Digest, § 5438, confers the power not to establish and regulate *butchers,* but *markets,* and its power to impose a license fee is limited to the purposes of regulation, and does not confer the power thereby to raise revenue. 18 Fed. Cas. 111, defining a market; 26 Atl. 431; 33 Am. Rep. 462, 466. See 31 Ark. 462, and 64 Ark. 363, for powers of cities and towns in this State.

2. Whether or not section 6880, Kirby's Digest, is constitutional is not necessary to a decision of this case, but attention is called to art. 16, § 5, Const.

RIDDICK, J. The town council of the incorporated town of Stamps passed an ordinance which, among other things, required that all persons keeping butcher shops, and all dealers in fresh meats, selling in quantities in less than a quarter, should take out a license and pay therefor $12.50 per quarter, or $50 annually.

Another ordinance passed by the council, and which was entitled, "An ordinance to protect butchers and better regulate the selling of fresh meats," provides that "any person who shall sell meats within the corporate limits of the town of Stamps to consumers or other persons or corporations in less quantities than the quarter shall be regarded as a butcher, and be required to take out a butcher's license." Penalties were provided for violations of these ordinances.

The defendant, W. P. Burk, who lived outside of the town, was arrested and charged with retailing meats in quantities less than a quarter to people in the town without having procured therefor a license as required by the ordinances. On

a trial before the mayor of the town he was convicted and fined fifty dollars and costs. He appealed to the circuit court, but on the trial there the presiding judge, after hearing the evidence, directed a verdict for the defendant, and the town appealed.

A statute of this State permits old soldiers, who obtain certificates from the county judge showing that they have complied with the provisions of the act, to engage in peddling without a license. The defendant undertook to justify his conduct by this statute. Counsel for the town contended that the act was unconstitutional. When the case was tried before the mayor, he delivered a written opinion in which, referring to this question, he said: "The court with much felicity deems it unnecessary to consider the question of the unconstitutionality of the Old Soldiers' Act." We can concur in that conclusion for the reason that the act in question refers to peddling, and the defendant in this case is not accused of peddling without license, but "of selling fresh meat in less quantities than one-quarter of a carcass in a town without having paid the license fee required by the town ordinance." The fact that the county court authorized the defendant to peddle in the county gave him no right to violate a valid town ordinance regulating the sale of fresh meats, and the main question in the case is whether the ordinance was valid.

Cities and incorporated towns in this State have authority to regulate, tax or suppress hawkers and peddlers (Kirby's Digest, § 5438) ; but, as before stated, this prosecution is not for peddling without license, but for the violation of an ordinance which prohibits the selling of meat without procuring a license as a butcher.

The statute under which the town claims authority to enact this ordinance provides that towns "shall have power to establish and regulate markets." Kirby's Digest, § 5438. It is not shown that any market place has been established by the town of Stamps, and this ordinance does not expressly purport either to establish or to regulate a market. Counsel for defendant therfore contends that the statute giving the town authority to establish and regulate markets does not give the town authority to require a license of a farmer who buys a beef and retails it to citizens of the town. See *St. Paul* v. *Traeger,* 25

Minn. 248, 33 Am. Rep. 462; *Burlington* v. *Dankwardt,* 73 Iowa, 170.

But, if we concede that the town, in order to protect the public health, had the authority to regulate the selling of fresh meats, and to require parties retailing fresh meats in the town to take out a license, still the power conferred is the power to regulate, and not to tax. Under the power to regulate a license fee may be required sufficient to cover the cost of licensing and regulating; but the town has no right to use the power to license and regulate as a means of raising revenue. *Arkadelphia Lumber Co.* v. *Arkadelphia,* 56 Ark. 370. In that case this court held that a license fee of $25 for the privilege of keeping a ferry within the corporate limits of a city was not an unreasonable regulation, and was valid. One judge dissented, on the ground that the ordinance showed that its purpose was to raise revenue, and that the sum exacted was so out of proportion to the costs of licensing and regulating as to be in law unreasonable, and therefore the ordinance was void. In that case the license required was for the operation of a ferry within the town limits; in this case it is to regulate the business of selling fresh meats in the town, and the fee exacted here of each dealer is twice as large as required of the owner of the ferry in that case. It is evident that the operation of a ferry across a navigable river in a town or city might require a considerable amount of inspection and supervision, to see that the ferry and its machinery were kept in good condition, that it was not allowed at times to become overcrowded, to the end that the lives and property of those using the ferry might not be subjected to danger, and also to see that, while prompt and efficient service was rendered, no undue obstruction to navigation was caused by the operation of the ferry. For these reasons the license fee required in the case of a public ferry over a navigable river might reasonably be larger than that required of a butcher or one who sold meat from a wagon. See the *Laundry License Case,* 22 Fed. 701.

That the purpose of the license fee in this case was to raise revenue is plain when the amount of the fee is considered in connection with the fact that the ordinance does not attempt in any way to regulate the business beyond requiring a license

fee. There is no provision against the sale of unwholesome meats, or any other provision tending to regulate the business, or which would require some inspection and supervision on the part of the town authorities. There is nothing but a bald provision that butchers and other dealers in meat shall take out a license and pay $12.50 therefor quarterly.

The only charge against the defendant in this case is that he hauled meats of animals that he had slaughtered outside of the town limits and retailed them to consumers within the town. Granting that the city had the right to require him to take out a license and to pay therefor the same fee that is required of butchers and other dealers in fresh meats, we are of the opinion that under the facts shown the fee of $12.50 quarterly, or $50 per annum, was clearly exorbitant and unreasonable, and that the purpose of it was not regulation but taxation under the guise of regulation. The decisions in this as well as in other States fully supports this conclusion; but in considering them we must discriminate between these States in which the town has authority to require a license for revenue as well as regulation and those where, as in this State, the fee is allowed for regulation only, and where the town can not go beyond the sums reasonably required to cover the costs of the license fees and inspection. One of the best considered cases on this question is the *Laundry License Case,* 22 Fed. 701, where the town exacted a $20 license fee of a laundry. That case was cited by this court in the case of *Arkadelphia Lbr. Co.* v. *Arkadelphia,* 56 Ark. 370. It supports the decision in that case, but it shows clearly that the fee exacted here is unreasonable, and that the ordinance is void. *Arkadelphia Lbr. Co.* v. *Arkadelphia,* 56 Ark. 370; *Fayetteville* v. *Carter,* 52 Ark. 301; *Laundry License Case,* 22 Fed. 701; *Ash* v. *People,* 11 Mich. 347; *Vansand's Case,* 59 Mich. 334; *Kinsley* v. *Chicago,* 124 Ill. 359; *Cape May* v. *Transportation Co.,* 64 N. J. L. 80; *New Hudson Co.* v. *Hoboken,* 41 N. J. L. 72; *St. Paul* v. *Traeger,* 25 Minn. 248, 33 Am. Rep. 462; 1 Dillon on Municipal Corp., 385-390 and note; 2 Cooley on Taxation, 1134-1146.

As the ordinance for the violation of which the defendant was arrested is void, it follows that the judgment of the circuit

court directing a verdict in his favor should be affirmed, and it is so ordered.

HILL, C. J., (dissenting.) The right to regulate includes the right of inspection, and the cost of regulation and inspection may be imposed on those engaged in the business regulated. It is the right and duty of municipalities to inspect meat shops and markets for the protection of the health of the community. The license fee may be sufficiently high to pay all the expense involved in the performance of these duties by the municipality. The fact that the record fails to disclose whether the city is doing its duty or not is of no consequence, for that is not the question in issue. The question is whether this license fee is so unreasonably high as to indicate that it is levied for the purpose of municipal revenue, rather than to cover the expense of licensing and inspecting, which the city is authorized to perform, and which good government requires of it. I do not think the ordinance fixes an unreasonable charge for regulation and inspection.