# VILLAGE OF MINNEOTA v. JACK MARTIN. [1]

February 6, 1914.

Nos. 18,419—(218).

**Violation of village ordinance — evidence in prosecution.**

1. In a criminal prosecution for violation of a village ordinance, the com plaint is sufficient if it refers to the ordinance by number, chapter, or section, and it is not necessary to introduce the ordinance in evidence.

**Auctioneer — amount of license fee.**

2. It is not made to appear that a twenty-five dollars per day license fee for auctioneers, which villages are authorized to impose by chapter 138, Laws of 1905, is so large as to be beyond the scope of legislative discretion.

Complaint was filed in justice court against Jack Martin for violating an ordinance of plaintiff village in exercising the trade of auctioneer without first having obtained a license. From the judgment rendered in justice court wherein defendant was fined $25, he appealed to the district court for Lyon county. The appeal was heard upon stipulated facts by Olsen, J., who made findings and affirmed the judgment of the justice court. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*J. E. Regan* and *Ivan Bowen,* for appellant.

*Gislason & Gislason* and *James H. Hall,* County Attorney, for respondent.

HOLT, J.

The question presented on this appeal is the validity of an ordinance of the village of Minneota, requiring an auctioneer to pay a license fee of $25 for each day that he pursued his calling as such within the village. Defendant was convicted of a violation of this ordinance and appeals from the judgment.

[1] Reported in 145 N. W. 383.

There was no settled case so that the only record before us is the complaint, findings and judgment. The point is made that the evidence not being here the ordinance cannot be considered. This would be true if the law had remained the same as it was when the village was incorporated. But the general village law of 1875 was amended by chapter 145, p. 148, Laws of 1885, bringing all villages under its operation, whether formed under general or special laws. The substance of the law, as subsequently amended by chapter 122, p. 230, Laws 1889, and applicable here, is found in section 1265, G. S. 1913, and reads: "It shall be a sufficient pleading of the by-laws, rules, or ordinances of a village to refer to the section and number or chapter thereof. They shall have the effect of general laws within the village, and need not be given in evidence upon the trial of civil or criminal actions." In other words, the court takes judicial notice of the provisions of the ordinance in this action, and must consider its validity.

The ordinance in question was passed in 1901. The law then conferred precisely the same power upon the village council (section 1224, G. S. 1894, being chapter 122, p. 230, Laws of 1889) given by chapter 138, p. 175, Laws of 1905, in respect to restraining or licensing auctioneers, hawkers and peddlers. The fact that chapter 122, p. 230, Laws of 1889, was repealed in terms by Revised Laws of 1905 does not change the situation because chapter 138, p. 175, Laws of 1905, went into effect prior to such repeal. There is no escape from the conclusion that the legislature has authorized a village to impose a license fee of $25 per day on an auctioneer. The law giving the authority, so far as material to the matter in hand, reads: "To restrain or license, regulate and tax auctioneers, hawkers and peddlers; and in all such cases they may fix the price of said license or tax, and prescribe the term of the continuance of such license, and may revoke such license when in the opinion of the village council the good order of [or] the public interests of the village require it; provided, that the council may in any case where, in their opinion, the public interests of the citizens of the village require it, refuse to grant any license for the above purposes, and provided, also, that twenty-five ($25) dollars a day shall be

construed by the courts of said state as a reasonable price per day for an auctioneer's license issued under the above provision."

We agree with appellant that the court is not bound by the legislative construction of what is a reasonable license fee. If such construction contravenes constitutional guaranties, courts should not hesitate to hold it for naught. Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L.R.A. 777, 12 Am. St. 663. But it is elementary that courts should not set aside a statute unless satisfied beyond a doubt of its infringement upon some right guaranteed by state or Federal Constitution. That it so does must be made to appear either from evidence or from matters of which courts have judicial notice or knowledge. In this case there is no evidence and no findings of fact which bear on the reasonableness of the fee. Littlefield v. State, 42 Neb. 223, 60 N. W. 724, 28 L.R.A. 588, 47 Am. St. 697. In Trenton Horse R. Co. v. City of Trenton, 53 N. J. L. 132, 20 Atl. 1076, 11 L.R.A. 410, it is said: "The judicial power to declare it void can only be exerted when from the inherent character of the ordinance or from evidence taken showing its operation it is demonstrated to be unreasonable." An ordinance "will be presumed to be reasonable, unless the contrary appears from the law itself, or is established by proper evidence." Van Hook v. City of Selma, 70 Ala. 361, 45 Am. St. 85.

Although the statute authorizes villages to license and tax auctioneers, we think it plain that in this ordinance is found no attempt to tax, and the legality of the fee must rest on the reasonableness thereof within the scope of a proper exercise of the police power.

It is well settled that upon this last-mentioned basis a license fee may be of sufficient amount to include the expense of issuing the license and the cost of the necessary police surveillance connected with the business or calling licensed. And, when the license relates to a vocation or business which the municipality has the power to regulate, the license fee may be sufficiently large to work a restraint. City of Duluth v. Krupp, 46 Minn. 435, 49 N. W. 235; State v. Jensen, 93 Minn. 88, 100 N. W. 644. While it is true that the legislature may not, under the pretense of regulating and licensing a lawful calling or business, prohibit, it is nevertheless

true that frequently individuals must subordinate their rights to a certain extent to the demands of the public welfare. No authority can be found holding an auctioneer not subject to the police power of regulation. People v. Grant, 126 N. Y. 473, 27 N. E. 964, states that "The right to regulate, control and limit the number of persons employed in such business has been exercised by the legislature as one of its acknowledged police powers from colonial times to the present and, I believe, has never been questioned." What a regulatory license fee shall be is largely within the legislative discretion. City of St. Paul v. Colter, 12 Minn. 16 (41).

It is insisted that this case is ruled by City of Mankato v. Fowler, 32 Minn. 364, 20 N. W. 361, wherein the business of an auctioneer is designated as a lawful and useful one. And in City of Duluth v. Krupp, supra, the vocation of the auctioneer is conceded to be on a higher plane than that of peddling, which is apt to degenerate into a nuisance if not regulated and restrained. Each occupation is lawful and may be useful both to the individual who pursues it and to the community. But we believe both are equally liable to abuse. No doubt the legislature was convinced thereof or else such substantial license fee, indicating a purpose to restrain, would never have been authorized. State v. Finch, 78 Minn. 118, 121, 80 N. W. 856, 46 L.R.A. 437. And we may observe that no one about the time of the enactment of this statute could have walked on the main streets of our large cities, especially near railroad depots, without being convinced that the business of auctioneers was fast degenerating into a nuisance and had become a subject of restraint. In Town of Decorah v. Dunstan, 38 Iowa, 96, an auctioneer's license fee of $20 per day was upheld; but in City of Ottumwa v. Zekind, 95 Iowa, 622, 628, 64 N. W. 646, 29 L.R.A. 734, 58 Am. St. 447, a license fee of $25 per day for a transient merchant was held prohibitive, Justice Deemer observing with reference to the first-mentioned case: "The fee charged an auctioneer may well be larger than that imposed upon a transient merchant, on account of the character of the business, and the greater necessity for supervision over the auctioneer. Again there was no showing that the fee demanded of defendants in that case was an unreasonable one." We cannot

say that the business of an auctioneer is not of the kind liable to become inimical to the welfare of the community, unless restrained in villages and cities.

Because a yearly license of $300 was held prohibitive and invalid in City of Mankato v. Fowler, supra, it does not necessarily follow that a per diem license fee of $25 must fall. If an auctioneer could get but a single day's work under the Mankato ordinance, he was compelled to pay $300 to secure it. There it also appeared from the findings that the ordinance was prohibitive, for it was found that no auction had taken place in the year the ordinance was in operation, whereas previously such auctions were frequent. Nor may it be said that a per diem license fee may not properly be much larger than the proportion of a legitimate annual fee. In re White, 43 Minn. 250, 45 N. W. 232, concerning the validity of a peddler's license of $3 per diem, the court states: "There is a clear distinction between the case of persons who are engaged the whole year in one place, in some permanent business, and that of hawkers and peddlers, who are transient, and usually remain only a short time in one place. What might be an excessive fee, estimated by the day, as to the former, might not be so as to the latter. The cost of issuing the license would be the same for the short term as for the long one, and the expense of police supervision (which may undoubtedly be taken into account in fixing the amount of the license fee) may be relatively much greater in the case of a temporary and transient business."

As stated before, we are left in the dark in this case, as to the extent to which auctions may be called for in villages like Minneota. It may be that during any one year the village will not afford legitimate opportunity for an auction except for a day or two. Usually the legislature leaves the reasonableness of the fee to the municipality, and, when its proper law-making body has exercised its discretion as to the amount, courts reluctantly interfere, and only when it is clear that there has been an abuse of discretion. Here the legislature itself has exercised its judgment as to what is a reasonable license fee. We may well assume that the legislators informed themselves of the situation and did not act merely on such knowledge as

courts are charged with possessing. As this case is presented by the record, we are unable to say that it appears beyond reasonable doubt to our minds that this license fee is oppressive, prohibitive or unreasonable.

We do not think any other question meriting discussion is raised by the appeal.

Judgment affirmed.