JOSEPH W. CHADDOCK, PRESIDENT, ETC., v. FAYETTE S. DAY, JUSTICE OF THE PEACE.

*Municipal corporations—Ordinances and by-laws—Police regulation—Restraint of trade—License fee.*

| 75 | 527 |
| 105 | 678 |

| 75 | 527 |
| 106 | 35 |

| 75 | 527 |
| 115 | 200 |

| 75 | 527 |
| 153 | ¹490 |
| 153 | 492 |

1. The law will not allow the right of property or business to be invaded under the guise of a police regulation for the benefit of the public health or good order, when it is manifest that such is not the object or purpose of the enactment or by-law. *Austin v. Murray,* 16 Pick. 126.

2. Where, under its charter, a village has the right to exact a license fee as compensation for the expense of the supervision of a lawful business or trade carried on therein, the exaction of a fee of $10 per month is excessive and unreasonable, and therefore void.

3. An ordinance of a village requiring the payment of a license fee of $10 per month for the privilege of selling fresh meat on the village streets, in less quant.ties than one-quarter of the slaughtered animal, is in restraint of trade, and not within the legislative power of the village to enact.

Application for *mandamus* to compel respondent to entertain a complaint and issue a warrant for the violation of a village ordinance. Submitted April 24, 1889. Denied June 28, 1889. The facts are stated in the opinion.

*C. R. Wilkes,* for relator.

*Pope & Hart,* for respondent.

MORSE, J.   Application for *mandamus.*

April 17, 1882, the president and board of trustees of the village of Allegan adopted the following by-law, being No. 16 of the by-laws of said village:

"It shall not be lawful for any person to sell or offer for sale, on any street in the village of Allegan, any fresh meat of any animal, in pieces or quantities less than one-quarter of any such animal, without first paying into the village treasury the sum of ten dollars in advance for each month, and obtaining from the clerk a permit for such sale. Any person violating any of the provisions of this by-law shall, on conviction thereof, be punished by a fine in a sum not less than $15.00, nor more than $25.00, or by imprisonment in the county jail for a period not exceeding 30 days."

It is alleged in the petition for *mandamus* that one Charles Schermerhorn, of said village of Allegan, did, on the twenty-sixth day of January, 1889,—

"Go about from place to place, and from street to street, selling fresh meat of beef and swine in pieces and quantities less than a quarter of such animals, on the public streets in said village, contrary to the provisions of said by-law 16."

And that on the eighth day of February, 1889, the relator, as president of said village, made a complaint in writing and on oath before Fayette S. Day, the respondent, a justice of the peace in and for the township of Allegan, in which township the said village is situated, praying for the issuing of a warrant by said justice for the arrest of said Schermerhorn for violating said by-law.

Relator further alleges that the charter of the village requires all prosecutions for violations of the ordinances and by-laws of said village to be brought before some justice of the peace of the said township of Allegan, and authorizes such justice to issue a warrant for the arrest and apprehension of any offender against said by-laws; and that there is

no other method of enforcing the provisions of said by-law No. 16, except by complaint and warrant. See sections 1, 2, art. 30, Act No. 300, Local Laws of 1883, pp. 518, 519.

The said justice of the peace refused to entertain said complaint, and refused to issue a warrant.

There are but two justices of the peace residing in said township of Allegan, the respondent and James E Fuller, and it is shown by the petition for the writ that Fuller was ill and unable to attend to business.

The writ of *mandamus* is asked to compel the said Fayette S. Day to entertain the complaint against said Schermerhorn for the violation of said by-law, and to issue his warrant for the arrest and apprehension of said Schermerhorn, that he may be apprehended and held to answer said complaint, and f rther dealt with in relation to the same as law and justice may require.

The respondent makes answer to the order to show cause, heretofore issued by this Court, in which he admits that relator is president of the village of Allegan, and authorized to see that its ordinances and by-laws are enforced, and that the by-law in question was adopted by the president and trustees of said village; but he alleges that said by-law was never published in any newspaper printed and circulating in said village of Allegan, as required by the charter of said village, it being printed in the form of a supplement to the Allegan Democrat, a newspaper published and circulating weekly in said village, which said supplement, containing only said ordinances and by-laws, was folded in and put in circulation with the regular issues of said newspaper; and he alleges that this method of circulation is not a compliance with the provision of the charter.

He admits that relator made complaint as stated in the petition, and that he refused to entertain said complaint, because he believed, and still believes, that said by-law is illegal and void because the president and board of trustees

75 MICH.—34.

had no power or authority, under the charter of said village of Allegan, to pass said by-law; and that said by-law is void because it is unreasonable, and in restraint of trade; and that the only object and effect of said by-law No. 16 is to restrain certain persons from selling fresh meat in quantities less than one-quarter of an animal, so as to protect those selling at retail in their shops.

He also submits that the by-law is void because not published according to law, as heretofore stated.

He further answers that there has never been any public market fixed or established in said village, and no rule, ordinance, regulation, or by-law has ever been adopted or passed by the board of trustees establishing or regulating a market or markets in said village; and he submits that said by-law No. 16 does not provide for regulating or licensing "hawkers, hucksters, or peddlers" under the power given in the charter of said village, and that its effect is to discriminate unjustly in favor of a certain class of persons in the business of selling fresh meats, and against other persons in the same business, and that said by-law provides for an unjust tax, and not for a license fee.

We do not consider it necessary to determine whether the by-law was properly published under the law.

It is claimed by counsel for the relator that this by-law No. 16 is within the powers granted to the president and board of trustees of the village of Allegan under its charter, and such counsel places it as a by-law regulating and licensing peddlers, and claims that section 2, subd. 10, art. 6, of the charter authorizes them to license and regulate—

"Hawkers, hucksters, and peddlers within the limits of said village, and to require the payment of reasonable license fees."

This subdivision 10 (in connection with section 2) reads as follows:

" The board of trustees shall have full power within said village to license and regulate theaters, shows, traveling concerts, auctioneers or auction sales, gift enterprises, *hawkers, hucksters, peddlers,* and pawnbrokers, or prohibit them from soliciting patronage of the community within the limits of said village; and to require the payment of reasonable license fees."

By an examination of the ordinances and by-laws of the village of Allegan, it appears that the subject of licenses is treated under by-laws Nos. 11 and 19, No. 11 being devoted entirely to auctioneers. But the amount of license fees, and the regulations relative to "hawkers, hucksters, and peddlers," are found entirely within by-law No. 19. Peddlers and hawkers of any articles, except fruit, food, or feed, are charged a license of $5 per day. Stand licenses are placed at $1 per day. No license is anywhere required for, or any tax placed upon, the sale of food, except in the case of those selling fresh meats in the quantities, on the street, as mentioned and prescribed in by-law No. 16.

We do not think this by-law can be sustained as a regulation of hawkers or peddlers, as it is evident it was not so intended by its framers. Indeed, it appears to be open to the charge of the respondent that it was passed in the interest of the persons in said village selling fresh meat in shops, and in restraint of trade.

It is quite common in these latter days for certain classes of citizens—those engaged in this or that business—to appeal to the government—national, state, or municipal—to aid them by legislation against another class of citizens engaged in the same business, but in some other way. This class legislation, when indulged in, seldom benefits the general public, but nearly always aids the few for whose benefit it is enacted, not only at the expense of the few against whom it is ostensibly directed, but also at the expense and to the detriment of the many, for whose benefit all legislation should be, in a republican form of government, framed and

devised. This kind of legislation should receive no encouragement at the hands of the courts, and be only upheld when it is strictly within the legitimate power of Congress, or the state or municipal legislatures.

In the present case the argument is strenuously made that the village has the right to regulate the selling of fresh meats, under the authority of subdivision 10, and that such a regulation is not in restraint of trade; that the imposition of the payment of $10 monthly is not a tax, but a license, and that it is not in restraint of trade, and the license fee is not unreasonable. The counsel for relator cites a large number of cases in support of his position.

It is conceded that no public market has ever been established in the village, and that there have never been any market regulations, and it is not pretended that by-law No. 16 was intended as a market regulation.

It is not passed under any authority to regulate the use of the public streets, nor yet can it be said to be an exercise of the police power in the interest of the public health. It does not prohibit the sale of fresh meats in the streets, in quantities above the quarter of an animal, and has no reference whatever to the character or condition of the meat sold. It must be sustained, if it can be sustained at all, under the tenth subdivision of section 2 of the charter, heretofore quoted, and the counsel for the relator substantially admits this in his argument.

A sufficient answer to this plea would be that it manifestly was not intended as an exercise of power under this subdivision. It is evident that it was simply an exercise of arbitrary and unauthorized class legislation for the benefit of a few shop-keepers, and an unjust discrimination against those who desired to sell from carts or wagons about the village. It is difficult to perceive how such a by-law could be of public benefit. Its tendency would be, if enforced, to increase the price of fresh meat to the consumer, while it could serve

no useful or beneficial purpose, as an offset to this increased cost of an article of daily and necessary food. In almost every case cited by the relator's counsel to sustain this by-law there was a public market in the village or city, and such a by-law was adjudged valid upon the ground that it was a market regulation. See *Buffalo v. Webster*, 10 Wend. 102; *Bush v. Seabury*, 8 Johns. 418; *Chicago v. Bartee*, 100 Ill. 57; *Rochester v. Pettinger*, 17 Wend. 265; *Nightingale's Case*, 11 Pick. 168.

In *Ash v. People*, 11 Mich. 347, 352, an ordinance prohibiting persons from keeping a meat market, or stand outside of the market, without a license, was held valid by a majority of the Court, on the ground that the license fee of $5 a year was a reasonable market regulation for the indemnity of the city for the expense of attending to the supervision of the business at the place licensed; but in the present case there is no market established in Allegan, and, consequently, no market regulations.

The business engaged in by Schermerhorn is an innocent and useful one, and sanctioned by the general laws of this State; and, if it be conceded that the village authorities, under the charter, have a right to exact a license fee as a compensation for the expense of the supervision of the trade, yet the fee proposed to be exacted by by-law No. 16, to wit, $10 per month, is excessive and unreasonable, and therefore void.

Nor can it be sustained under any claim of an exercise of the police power for the benefit of the public health, or in the preservation of good order in the community, and there is no showing anywhere in the record that the by-law was passed for the benefit of the health of the people of the village, or in the maintenance of good order. And it is not easy to see how the business of selling meat, as carried on by Schermerhorn, would be any more prejudicial, either to the health or good order of the community, than if he was sell-

ing in a butcher shop. Nor would the exaction of such a license or tax as the one prescribed in this case be the proper method of police regulation, in case either the public health or order was liable to be imperiled by this method of selling fresh meat. The control and regulation of the business, to guard against either the danger to the health or good order of the community, would, if of any benefit, have to be exercised in other ways than by the imposition of a license fee or tax upon all dealers from carts or wagons alike, without reference to anything save the business they were engaged in, and so heavy as to be in effect a penalty rather than a license.

This by-law, as before said, had its purpose, which was not in the direction of a police regulation, but in restraint of trade. The law will not allow the right of property or business to be invaded under the guise of a police regulation for the benefit of the public health or good order, when it is manifest that such is not the object or purpose of the enactment or by-law. *Austin v. Murray*, 16 Pick. 126.

The by-law in question here, in effect, gives the right to sell fresh meat to a few in exclusion of all others. It would tend to greatly enhance the price of a necessary article of food, and to compel a loss of t me, by forcing all the people of Allegan to resort to the butcher shops to procure their daily supply. "If all fresh meats may thus be controlled in their sale, all kinds of meats, bread-stuffs, vegetables, and fruits may be brought under the same restriction." If this may be done, the business of selling food would fall into the hands of the few, and all competition outside of the shops and stores would be destroyed, and the people oppressed. Such a by-law is not reasonable, and, in this case, the license fee or tax, whichever you may call it, is so extortionate as to make it almost prohibitory. See *Bloomington v. Wahl*, 46 Ill. 489, 494; *Chicago v. Rumpff*, 45 Id. 90; *Dunham v. Rochester*, 5 Cow. 462; *Barling v. West*, 29 Wis. 307; *Hayes v. Apple-*

*ton,* 24 Id. 542; *Gale v. Kalamazoo,* 23 Mich. 344; 1 Dill. Mun. Corp. §§ 253, 256, 296.

The writ must be denied, with costs against the relator.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred. SHERWOOD, C. J., did not sit.