(March 3, 1905.)

## IN RE LUTHER SNYDER.

[79 Pac. 819.]

CITY ORDINANCE, WHEN VOID—FARMER MAY SELL BEEF IN THE CITY WITHOUT LICENSE.

1. An ordinance by the terms of which a farmer is prohibited from selling the products of his farm, with the exception of milk, fish and game, without first taking out a license from the city, is in violation of section 8 of an act entitled "An act to repeal

section 1651 of the Revised Statutes of the state of Idaho and to provide for the licensing of peddlers, hawkers and solicitors, and prescribing penalties for failure to comply with the provisions of this act." (Sess. Laws 1901, p. 56.)

2. Beef from slaughtered animals raised and slaughtered on the farm is the product of the farm, and may be sold within the corporate limits of cities of this state without license.

(Syllabus by the court.)

ORIGINAL proceeding for writ of *habeas corpus.* Petition granted.

The facts are stated in the opinion.

J. C. Johnson, for Petitioner, cites no authorities on the points decided not found in the opinion.

Wyman & Wyman and C. M. Kahn, for Respondent.

Neither the original section 1651 nor the repealing act in any way states that peddlers or hawkers in farm products shall not pay a license, but it simply says in section 8 that "the provisions of this act shall not be construed to apply to . . . . peddlers or hawkers in farm products." The act is one simply for state and county licenses and does not purport to be exclusive. To the contrary, section 1636, Revised Statutes, which is a part of the same chapter, providing for licenses, says: "No license issued under this chapter authorizes any person to carry on any business within the limits of any incorporated city or town having power by its charter to impose or levy city or town licenses thereafter, unless such person, in addition to the license provided by this chapter, also procures the license required by the ordinances or orders of such city or town." This would seem to be conclusive of this question. (*Canova v. Williams,* 41 Fla. 509, 27 South. 30; 21 Am. & Eng. Ency. of Law, p. 787.) The legislature has expressly given the authority to the city council to define what a peddler is, and there is no claim made nor can there be any authority shown that the legislature has not the power to authorize the city council to define a peddler. Under the authority given to it by its charter, the city has defined a peddler by ordinance, and it

includes within its terms the petitioner. That one selling products of farms is defined to be a peddler by this ordinance is very clear. (Revised Ordinances of Boise City, sec. 454, p. 106.) The validity of this ordinance is attacked on the ground that it tends to create a monopoly, and is unreasonable, oppressive and prohibitive. There is no attempt made to create a monopoly. There is no prohibition on the farmer selling his products anywhere and on the same terms and conditions of others engaged in peddling; but there can be no question that it is not in restraint of trade to absolutely prohibit the peddling of garden and farm products, meat, poultry, game, etc., about the streets of the city. (McQuillin on Municipal Corporations, p. 765.) It is very important to note the distinction between the Boise city charter and most of those discussed in the cases cited by petitioner. Those cases like *City of Burlington v. Dankwardt,* 73 Iowa, 170, 34 N. W. 801, *St. Paul v. Laidler,* 2 Minn. 159, 72 Am. Dec. 89, *City v. Traeger,* 25 Minn. 248, 33 Am. Rep. 462, and *City of St. Paul v. Stoltz,* 33 Minn. 223, 22 N. W. 634, cited by petitioner, were under charters that simply gives the city authority "to establish and regulate markets," and it was held that ordinances prohibiting the sale of meat except in shops under that ordinance was void. In those cases the cities had no ordinances requiring peddlers to procure licenses, so that those cases are not in point. Some statutes only allow cities to "license and regulate," and a different rule is here applied, but the charter of Boise city provides that they may "license, tax and regulate," and under such a charter petitioner fails to cite one authority which would hold that the amount fixed by the ordinance in this case is unreasonable, prohibitive or in restraint of trade. The purpose of a statute in empowering cities to pass ordinances in restraint of hawking and peddling is forcibly stated in the cases of *Graffty v. City of Rushville,* 107 Ind. 506, 57 Am. Rep. 128, 8 N. E. 609; *South Bend v. Martin,* 142 Ind. 40, 41 N. E. 315, 29 L. R. A. 531; *Temple v. Sumner,* 51 Miss. 13, 24 Am. Rep. 615; *Hall v. Commonwealth,* 101 Ky. 382, 41 S. W. 2. It would be difficult, if not impossible, to fix any license tax which would fall with per-

fect equality upon all persons engaged in the same occupation. (See *City of St. Paul v. Colter,* 12 Minn. 48, 90 Am. Dec. 278; *In re Vandine,* 6 Pick. 187, 190, 17 Am. Dec. 351; *Stull v. De Mattos,* 23 Wash. 79, 62 Pac. 451, 51 L. R. A. 892; *City of Chicago v. Bartee,* 100 Ill. 57; *People v. Russell,* 49 Mich. 617, 43 Am. Rep. 478, 14 N. W. 568; *Shelton v. Mobile,* 30 Ala. 540, 68 Am. Dec. 143; *Emert v. State of Missouri,* 156 U. S. 306, 15 Sup. Ct. Rep. 367, 39 L. ed. 432.)    The licensing of butchers and restraining of persons selling meat indiscriminately is one that especially commends itself to the lawmaking power as necessary for the preservation of health, and has not commended itself to the courts for special privileges. (*People v. Russell,* 49 Mich. 620, 43 Am. Rep. 478, 14 N. W. 568; Cooley on Taxation, 2d ed., pp. 301, 777; *Ex parte Haskell,* 112 Cal. 416, 44 Pac. 725, 32 L. R. A. 527; *Rosenbloom v. State,* 64 Neb. 342, 89 N. W. 1053, 57 L. R. A. 922; McQuillin on Municipal Corporations, pp. 634, 635; 21 Am. & Eng. Ency. of Law, p. 790; also p. 807; Cooley on Taxation, 1141; *Ex parte Heylman,* 92 Cal. 492, 28 Pac. 675—rate higher held not oppressive.)    There perhaps has been more or less sentimentalism making exemption in favor of farmers in the general laws.    Frequently this exemption has been held to be unconstitutional.    (*Georgia Packing Co. v. Macon,* 60 Fed. 774; McQuillin on Municipal Corporations, pp. 256-298; *Town of Mandeville v. Baudot,* 49 La. Ann. 236, 21 South. 258.)

STOCKSLAGER, C. J.—This is an original application for a writ of *habeas corpus.*    The petitioner was arrested charged with the violation of section 454, Revised Ordinances of the City of Boise.    On his trial he was convicted and thereafter fined in the sum of $15 and costs.    The ordinance with which petitioner is charged with violating is as follows: "Peddlers shall be classified and rated as follows: When traveling with more than two animals, first class.    When traveling with two animals, second class.    When traveling with one animal, third class.    When traveling on foot, fourth class.    Peddlers of the first class shall pay a license of twenty-five dollars ($25) per month; of the second class shall pay a monthly license of *twenty*

dollars ($20); of the third class shall pay a monthly license of fifteen dollars ($15); the peddlers of the fourth class shall pay a monthly license of ten dollars ($10); that there are excepted from the provisions of this section, persons peddling newspapers, religious tracts, and farmers or gardeners peddling milk, fish or game."

The complaint charged petitioner with peddling his beef in the city of Boise without first procuring a license therefor under said ordinance. Petitioner refused to pay the fine and costs and was committed to the jail of Boise until the fine and costs were paid; that petitioner is still restrained of his liberty under said commitment by said court for refusing to pay said fine and costs. Petitioner first alleges that said ordinance is invalid and void for the reason that the said ordinance is in conflict with article 12, section 2, of the constitution of the state of Idaho.

2. That the said court had no jurisdiction upon which to sustain said proceedings and judgment, for that the said ordinance upon which said judgment and proceedings were based is illegal, unconstitutional and void.

3. That the said ordinance is in conflict with and repugnant to the constitution of the United States.

4. That the defendant is not a peddler or hawker, and that the said ordinance does not apply to the defendant and that the prosecution had under said ordinance is illegal and void and the court had no jurisdiction to assess a penalty thereunder against the defendant herein.

5. That the said ordinance is void, for the reason that it unjustly discriminates between the residents of the same locality and the same county, and against different sections and classes of the same locality.

6. That the said ordinance is void, for that the said tax is not uniform as imposed upon the residents of Boise City and Ada county.

7. That the said ordinance is void, for the reason that the same was established and enacted in favor of a special class, to wit, the butchers of Boise City, Idaho, to drive out the products of the farmers of Ada county, Idaho.

8. That the amount of the tax for a license as fixed under said ordinance is unreasonable, oppressive, prohibitive, partial and therefore void.

9. That the said ordinance is void, for that it is in restraint of trade and business; that the defendant herein is not a butcher by trade nor carrying on said business, and does not reside in the city of Boise, but is a farmer by trade and occupation and resides near the town of Meridian, Ada county, Idaho, and that all the meat that he sold was of the product of his own farm; that he had no office either upon his farm or in Boise City, or at any place whatsoever wherein he conducts any business as a butcher, or as a hawker or as a peddler.

10. That the said ordinance is illegal and void, for the reason that the city council of Boise City, Idaho, had no power to enact the said ordinance in question; that they acted beyond their power in so enacting said ordinance.

11. That the said ordinance is void because it interferes with the business and property rights of persons and citizens of Ada county, in this locality, and is excessive and prohibitive in the license tax therein provided.

The facts upon which defendant was tried and convicted before the police magistrate are stipulated and are shown to be that defendant in that court, petitioner here, was charged with selling meat within the corporate limits of Boise City, contrary to the ordinance of said city and without first having procured a license as provided by section 454 of the Revised Ordinances of the city; was convicted and fined in the sum of ten dollars and was committed to the jail of said city until such fine and costs are paid. It is further stipulated that petitioner is not a resident of Boise City, nor has he any business occupation therein as a butcher, nor does he conduct the butcher business in the city of Boise, nor upon his farm. That petitioner is a farmer by occupation, residing upon his farm near the town of Meridian; that all the beef sold by defendant was the product of his own farm in Ada county, Idaho; that he sold his beef by the quarter of a slaughtered animal which was slaughtered upon his farm in said county, and was the product of cattle raised upon his said farm. That petitioner did not purchase a license as provided by the ordinance of the city of Boise.

Counsel for petitioner insists that the ordinance in question is void for the reason that it is in conflict with article 12, section 2 of our constitution, which provides that, "Any incorporated city or town may make and enforce, within its limits, all such local, police, sanitary, and other regulations as are not in conflict with its charter or with the general laws."

It is also urged by counsel for petitioner that the legislature of this state in 1901, enacted a law that is a bar to a prosecution of petitioner under the ordinances of the city for selling within the corporate limits of the city the products of his farm, for the reason that by section 8 of the act found on page 156 of that session, he is exempt. Section 8 provides: "Applicable when. The provisions of this act shall not be construed to apply to runners traveling for wholesale houses and taking orders from merchants only, nor to peddlers or hawkers in farm products."

The act of which the above-quoted section is a part repeals section 1651, Revised Statutes, which was as follows: "Every traveling merchant, hawker or peddler, who carries a pack and vends goods, wares, or merchandise of any kind other than the manufactures or productions of this territory, must pay for a license ten dollars per month; and every such traveling merchant, hawker or peddler, who uses a wagon, boat or other water craft, or one or more animals, for the purpose of vending such goods, wares, or merchandise of any kind, must pay for a license twenty dollars per month."

Subdivision 48 of the amended charter of Boise City provides: "'The power and authority given to the council by subdivision 37 of this section can only be enforced or exercised by ordinance, unless otherwise expressly provided, and a majority of the council may pass any ordinance or resolution not repugnant to the constitution and laws of the United States or of the state of Idaho, necessary or convenient for carrying into effect any power or authority granted by this act."

As we view it the important questions to determine are: 1. Is the ordinance complained of in violation of the constitution and laws of the state? 2. Has the city under its charter power to enact an ordinance prohibiting a farmer from selling meat

raised and slaughtered on his farm, within the corporate limits of the city? 3. Are cattle raised, fattened and slaughtered on the farm products of the farm? 4. Is an ordinance that prohibits the sale of any of the products of the farm, excepting milk, fish and game, without first procuring a license, class legislation? If either of these questions is to be decided in favor of the petitioner, then his petition must be granted.

On the first question our attention is called to a case decided by this court entitled *In re Ridenbaugh*, 5 Idaho, 371, 49 Pac. 12. This was also a *habeas corpus* proceeding. The petitioner was convicted of the crime of conducting the gambling game of "faro" in Boise City, Idaho, under the provisions of an act entitled: "An act to prohibit gambling, and to provide for the punishment thereof, and for other purposes," approved March 8, 1897 (Sess. Laws 1897, p. 53). On the trial the petitioner relied on a license procured from the corporate authorities of Boise City. After the state had proved that the defendant had been conducting said gambling game, the defendant offered to introduce in evidence license No. 225 of said city, which is as follows: "No. 225, Boise City. License granted May 8, 1897, State of Idaho. Expires August 7, 1897. This license is granted to Thos. Constance for faro, in Boise City."

It is shown that the court rejected any and all evidence offered by petitioner showing that the city had attempted to license gambling in the city on the ground that the ordinance was in conflict with the constitution and laws of the state. Mr. Justice Sullivan, who wrote the opinion in the above case, after stating the facts, says: "The act amending sections 3, 5 and 11 of the charter of Boise City, approved March 12, 1897, provides that the city council may pass ordinances not repugnant to the constitution and laws of the United States, or the laws of this state, necessary or convenient for carrying the powers and authority granted into effect. (See Sess. Laws 1897, p. 85.) Thus it is shown by the original charter of Boise City, also by section 2 of article 12 of the constitution, and the act amending the charter of Boise City, that it was not the intention of the legislature or the framers of the constitution to empower the council of incorporated cities and towns to pass ordinances

in conflict with the general laws of the state. The cardinal rule in construing constitutional, as well as statutory, provisions, is to discover and enforce the intention of those who made them. Said provision of the constitution, as well as the provisions of the original charter of Boise City, and as amended, are too plain to require construction. It was not the intention to permit or authorize the councils of incorporated cities to legalize by ordinance acts prohibited as criminal by the general criminal laws of the state, or to enforce ordinances in conflict with the general law. In case of conflict the ordinance must give way. The ordinances authorized by the charter of Boise City must be in harmony with the general laws of the state."

In *Ex parte Sing Lee,* 96 Cal. 354, 31 Am. St. Rep. 218, 31 Pac. 245, 24 L. R. A. 195, the supreme court of California discusses an ordinance of the town of Chico in that state which provided that "No person can carry on a laundry business in such town except in certain blocks therein named, without obtaining a written permit from the board of trustees. Section 2 provides that the board of trustees shall grant no permit unless the person applying shall have obtained the written consent of a majority of the real property owners within the block wherein it is proposed to carry on such laundry business, and also of the four blocks immediately surrounding such block. Held, that such provisions were not police regulations within the constitution, article 11, section 11, providing that any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws, and were unconstitutional."

It is next urged by counsel for petitioner that even though the ordinance is valid, a prosecution cannot be sustained under it as the charter of Boise City, subdivision 2, provides: "To license, tax and regulate brokers, auctioneers, taverns, hawkers, peddlers, pawnbrokers, etc." This power, which was given to the city under the act of 1901, is still the law governing said city. The city is given the power to regulate hawkers and peddlers, but as to who in law is a hawker or peddler is not alone for the city to define. In our view of the case, this raises

a very serious question for the city to overcome. It cannot be seriously contended that the city by ordinance can arbitrarily preclude residents and citizens of the state or city from engaging in lawful business; neither do we think the city has the power to prevent farmers from selling the products of their farms to the citizens of Boise within the corporate limits, by an ordinance that attempts to class them as hawkers or peddlers. The ordinance in controversy attempts to prevent the sale of any article offered on the streets or within the city by a farmer, with the exception of game, fish and milk. The constitution says: "Any incorporated city or town may make and enforce within its limits . . . . such regulations as are not in conflict with its charter or with the general laws." The general law within the meaning of the above constitutional provision, when it provides that it is not applicable to peddlers or hawkers in farm products, excludes them from paying a license if the article complained of and shown by the agreed statement of facts to have been beef was the product of the farm within the meaning of the statute.

Again, the question arises: Is a farmer engaged in that business, with no other trade or occupation, because he slaughters his cattle, hogs or sheep on his farm and retails them in the city, a hawker or peddler within the ordinary meaning of those words? Webster says a hawker is "one who hawks; a peddler." "To sell goods by outcry in the streets." He says: "A peddler is one who sells by traveling—one who peddles, a traveling hawker; one who carries about small commodities on his back or a cart or wagon, and sells them."

In volume 15, American and English Encyclopedia of Law, second edition, page 294, in discussing hawkers and peddlers as applicable to farmers and gardeners, the author says: "A farmer or gardener, although he may vend his commodities at retail from door to door and from town to town, is not regarded as a hawker or peddler so long as he confines his sales to the growth or production of his own farm or garden. The sale of farm or garden produce in such case is considered merely an incident in the principal business of farming and gardening."

In *Gunn v. Mayor and Council of Macon*, 84 Ga. 365, 10 S.

E. 972, Gunn was charged with running a wagon in the city of Macon without first obtaining a license to do so. Mr. Justice Simmons, speaking for the court, says: "The tax sought to be collected from Gunn was a business and not a property tax. Under the charter of the city of Macon, the mayor and council have a right to impose a business tax upon each and every person doing business in said city, and they have a right to impose this business tax in the way of requiring owners of wagons to take out a license therefor when said wagons are engaged in carrying on the owner's business in said city. But under the facts of this case, Gunn was not carrying on any business in the city. He simply farmed near thereto, and clearing up his land for agricultural purposes, he saved the wood, hauled it to the city and sold it. He was not carrying on the wood business as a business, but simply sold the wood from his land as he cleared the same for the purpose of cultivation. He did not live in the city but in the country. Nor did he have any office or woodyard in the city or elsewhere for the purpose of carrying on the business of dealing in wood.

"We think the city authorities could with equal propriety tax every wagon belonging to a farmer who brought his cotton or his corn to the city for the purpose of sale. It seems to us that the bringing of cotton, corn or other agricultural products to the city for sale by farmers would be engaging in business in the city just as much as for Gunn to bring in his surplus wood and sell it in the city."

Whilst the facts in the above case have a definite and distinct bearing on the question under discussion, yet there is much more reason for holding that the ordinance in the case at bar cannot be enforced than there was in the Macon case. It seems that the city of Macon had by ordinance protected people engaged in trade in that city by requiring anyone who desired to engage in teaming, and evidently any and all classes of business, to procure a license from the city, thus protecting those who were willing to pay for the privilege of carrying on business in that city.

It does not appear that the city of Boise by ordinance requires everyone engaged in trade in the city to procure a license, hence

it cannot be urged that the ordinance was enacted to protect those engaged in trade within the corporate limits and had paid a license for such privilege.   Neither does it appear that the city has established a market-house or market-houses, or provided for an inspection of all meats sold within the city.   If the ordinance provided for either a market-house or inspection of all kinds of meat or other products sold in the city, then we could readily see the necessity for an ordinance of the character of the one in dispute; but in the absence of any requirement of the citizens of Boise engaged in the butcher business, or the sale of meat, where they have an established place of business, to procure a license, is certainly class legislation—prohibits the farmer from disposing of the products of his farm, except milk, fish and game, and can certainly have but one effect, and that is practically prohibiting the farmer from disposing of the products of his farm, and the city receives no revenue or benefit from the effect of such ordinance.

The case of *Gunn v. Mayor etc., supra,* discusses a case reported in 64 Ga. 128, 37 Am. Rep. 60.   The title is *Davis v. Mayor and Council of Macon.* The court says: "In that case Davis was a middleman.   He had his butcher stalls outside of the city, it is true, but he bought beef cattle from farmers and others, butchered them outside of the city, ran his wagons into the city, and delivered his beef to regular customers.   While his slaughter-pen was outside of the city, all his business save the slaughtering was done in the city, and this court properly held that he carried on a business in the city and was therefore liable to the license tax on his vehicles."

In *Borough of Sharon v. Hawthorne,* 123 Pa. St. 106, 16 Atl. 835, it is said in the syllabus: "The right to enact and enforce a borough ordinance prohibiting the hawking and peddling within the borough, of garden, farm or dairy products, not the products of one's own garden or farm, is authorized by section 2, paragraph 11, of the borough law of April 3, 1851, P. L. 320." In this case it was stipulated that Hawthorne purchased butter, eggs, and other farm products and sold the same from house to house in said borough.

It is urged by counsel for petitioner that the city of Boise could not, under the guise of a police regulation, pass an ordinance excluding the farmer from the sale of the products of his farm within the corporate limits of the city; if it did so, such an ordinance would be in restraint of trade and therefore void. In support of this contention he cites City of Bloomington v. Wahl, 46 Ill. 489; the syllabus says: "Under the authority conferred upon municipal corporations to erect, establish and regulate markets and market places, whenever the power is exercised, it must be reasonable and uniform in its operation, and be calculated to promote the general welfare of the inhabitants, and must not create monopolies, nor restrain trade."

"2. The charter of the city of Bloomington empowered the common council 'to erect market-houses, establish markets and market places, and provide for the government and regulation thereof,' under which an ordinance was passed, designating two certain lots, and the ground floor of the building thereon, as a market place, and prohibited any and all persons, at all hours of the day from keeping a private market, outside of the designated market place for the sale of fresh meats in any quantity, excepting a few certain kinds, under a penalty of $20.00 for each offense. Held, that the ordinance was unreasonable; that it was in restraint of trade, and tended to create a monopoly." Mr. Justice Walker in the opinion says: "A few plain principles, which are firmly established, and fully recognized by our courts, lie at the foundation of the exercise of this power. The ordinance must be reasonable, uniform in application throughout the limits in which it has operation; it must not be in restraint of trade; it must not create oppressive monopolies, but must be calculated to advance the general welfare of the inhabitants of the municipality." Again it is said: "If all fresh meats may be thus controlled in their sale, all kinds of meat, breadstuffs, vegetables and fruits may be brought under the same restrictions. If this may be done, the business in this department would fall into the hands of the few, and all competition would be destroyed, and the people oppressed. We cannot see that this ordinance is reasonable."

The ordinance under consideration by the Illinois court was much more reasonable and liberal in its terms than the case under consideration by us. The Bloomington ordinance had the following provision: "This section shall not prevent any person from selling, anywhere, at any time, fresh venison, poultry, fish or wild game, when not otherwise prohibited, nor shall it be construed to prevent any farmer or producer from selling his meat anywhere in the city at any time, in any quantities not less than one quarter; nor shall it be construed to prevent any trader from selling, anywhere in the city, at any time, dried or smoked beef, bacon, shoulders, hams or sides."

We have read with much interest the case of *Chaddock v. Day, Justice of the Peace,* 75 Mich. 527, 13 Am. St. Rep. 468, 42 N. W. 977, 4 L. R. A. 809. The opinion is by Mr. Justice Morse, concurred in by all his associates, with the exception of Sherwood, who did not sit. The trustees of the village Allegan adopted a by-law as follows: "It shall not be lawful for any person to sell or offer for sale, on any street in the village of Allegan, any fresh meat of any animal, in pieces or quantities less than one-quarter of any such animal, without first paying into the village treasury the sum of ten dollars in advance for each month, and obtaining from the clerk a permit for such sale." The charter granting powers to the trustees of the village provides that "The board of trustees shall have full power within said village to license and regulate theaters, shows, traveling concerts, auctioneers or auction sales, gift enterprises, *hawkers, hucksters, peddlers,* and pawnbrokers, or prohibit them from soliciting patronage of the community within the limits of said village; and to require the payment of reasonable license fees." The court says: "We do not think this by-law can be sustained as a regulation of hawkers or peddlers, as it is evident it was not so intended by its framers. Indeed, it appears to be open to the charge of the respondent that it was passed in the interest of the persons in said village selling fresh meat in shops, and in restraint of trade." It is further said: "It is quite common in these latter days for certain classes of citizens—those engaged in this or that business—to appeal to the government—national, state or municipal—to aid them by legis-

lation against another class of citizens engaged in the same business, but in some other way. This class legislation, when indulged in, seldom benefits the general public, but nearly always aids the few for whose benefit it is enacted, not only at the expense of the few against whom it is ostensibly directed, but also at the expense and to the detriment of the many, for whose benefit all legislation should be, in a republican form of government, framed and devised. This kind of legislation should receive no encouragement at the hands of the courts, and be only upheld when it is strictly within the legitimate power of Congress, or the state or municipal legislatures."

"The business engaged in by Schermerhorn is an innocent and useful one, and sanctioned by the general laws of this state; and, if it be conceded that the village authorities, under the charter, have a right to exact a license fee as a compensation for the expense of the supervision of the trade, yet the fee proposed to be exacted by by-law No. 16, to wit, $10 per month, is excessive and unreasonable, and therefore void." The writer cites a number of authorities in support of the opinion. If it was true in 1889, when this opinion was written that there was a tendency to concentrate business in the hands of a few to the detriment of the many, there has certainly been no relaxation of that spirit. If it was true that this kind of legislation should receive no encouragement at the hands of the courts and only be upheld when it is strictly within the legitimate power of Congress, or the state, or municipal legislatures, then there is much more reason for such action by the courts now. In support of his contention that the ordinance is void, counsel for petitioner cites *Chaddock v. Day, supra; Town of State Center v. Barenstein,* 66 Iowa, 249, 23 N. W. 652; 15 Am. & Eng. Ency. of Law, 299, sec. 4.

It is next insisted that the city council of Boise, under the existing charter, has power to establish market-houses and to regulate the location and management of market-houses, slaughter-houses, hide-houses and prohibit the sale of unhealthful, unwholesome food under the provisions of subdivision 13, page 120, Session Laws of 1901, yet he urges that no such ordinance has been enacted and the court cannot prohibit the sale of products.

of the farm.   In support of this contention he cites section 386, 1 Dillon on Municipal Corporations, fourth edition; *City of St. Paul v. Joseph Laidler,* 2 Minn. 159, 72 Am. Dec. 89; *City of St. Paul v. Traeger,* 25 Minn. 248, 33 Am. Rep. 462; *City of Burlington v. Dankwart,* 73 Iowa, 170, 34 N. W. 801.   The syllabus in this case says: "Power to prohibit peddling meat, section 456 of the code conferring on cities and towns the power to establish and regulate markets, does not confer the power to prohibit by ordinance the peddling of meat on the streets; not at least until the city or town has established a meat market; and not then unless it be a regulation of the market." *(Burr v. Atlanta,* 64 Ga. 225; *Davis v. City of Macon,* 64 Ga. 132, 37 Am. Rep. 60; *Harwood v. City of Wilmington,* 5 Houst. (Del.) 123; *Commonwealth v. Gardner,* 133 Pa. St. 284, 19 Am. St. Rep. 645, 19 Atl. 550, 7 L. R. A. 666; *Shuman v. City of Ft. Wayne,* 127 Ind. 109, 26 N. E. 560, 11 L. R. A. 378.)

That the ordinance is void, for the reason that the same was enacted in favor of a special class, to wit, the butchers of Boise city, to drive out the farmers of Ada county, Idaho, and infringe upon the property rights of the citizens of the same locality, counsel for petitioner cites 15 Am. & Eng. Ency. of Law, 2d ed., 298, subd. f.   The author says: "Laws in restraint of hawking and peddling enacted to benefit the business or conserve the interests of resident and established merchants or other persons immediately concerned have usually been declared invalid and condemned as unfairly discriminating class legislation.   But such laws have sometimes obtained judicial sanction." *(Gunn v. Mayor and Council of Macon,* 84 Ga. 365, 10 S. E. 972; *Chaddock v. Day,* 75 Mich. 527, 13 Am. St. Rep. 468, 42 N. W. 977; *Burlington v. Dankwart,* 73 Iowa, 170, 34 N. W. 801; *City of St. Paul v. Stoltz,* 33 Minn. 233, 22 N. W. 634; 22 Am. & Eng. Ency. of Law, 2d ed., 939; *Ex parte Sing Lee,* 96 Cal. 354, 31 Am. St. Rep. 218, 31 Pac. 245, 24 L. R. A. 195.)

It is next contended that where parties are exempted by the general law or the constitution of the state, an ordinance cannot be enacted requiring the payment of a license. *(Roy v. Shuff,* 51 La. Ann. 86, 24 South. 788.)   The syllabus says: "The

farmer who sells his crop in a small wagon (retailing it) is not a peddler and he is not liable under a license law, requiring peddlers to pay a license." (Dillon on Municipal Corporations, sec. 320.)

We have followed the exhaustive brief of counsel for defendant, which has evidently been prepared with much labor and care, but an inspection of the authorities cited does not convince us that the city has the power under the provisions of the state constitution and session laws, both cited, *supra,* to enact and maintain the provision of the ordinance which practically prohibits the farmer from marketing the surplus beef produced on his farm. It must be conceded that if this ordinance can be enforced in its present form, the effect of it is to prohibit the farmer from disposing of his cattle, the product of his farm, in any way except as dictated by the ordinance which in effect says, you must sell your cattle to the butchers of the city, or that product of your farm cannot be marketed in this city. It is immaterial what the intent of the ordinance is, or was, it is its effect that we must examine. If it is shown that the effect is a violation of the constitutional or statutory rights of the citizen, then the ordinance must give way to the higher power. We are fully satisfied that it was never the intention of the legislature to grant a charter to the city of Boise, or any other city of the state, by which they could, by ordinance, prohibit the farmer from engaging in a lawful business such as selling the product of his farm within the limits of the city. If it were shown that the ordinance was intended to protect the citizens from buying diseased meat, unwholesome vegetables, or other products, there might be some reason for its enactment. In our view of the case the petitioner should be restored to his liberty, and it is so ordered. The clerk of this court will serve a certified copy of the order upon the chief of police of Boise City, which will be his authority to release the petitioner from custody.

Sullivan, J., concurs.

Ailshie, J., not sitting at the first hearing, expresses no opinion.