(No. 5268. March 22, 1930.)

CONTINENTAL OIL COMPANY, a Corporation, Respondent, v. THE CITY OF TWIN FALLS, a Municipal Corporation, R. E. BOBIER, the Mayor, and R. B. SMITH, J. E. WHITE, L. A. CHAPIN and T. J. DOUGLAS, Members of the Council, J. L. MEE, the Police Magistrate, and R. E. LEIGHTON, the Chief of Police, All of Said City, Appellants.

[286 Pac. 353.]

E. M. Sweeley, for Appellants.

Walters, Parry & Thoman and J. R. Keenan, for Respondent.

VARIAN, J.—Plaintiff, Continental Oil Company, is the owner of a triangular piece of ground in the city of Twin Falls, bounded by Blue Lakes Boulevard, Shoshone Street, and Eleventh Avenue East, designated on the plat as "Block B." At the time this action was commenced there was a sidewalk along Shoshone Street, on said Block B, but no sidewalks on the other two sides thereof. Before the trial, pursuant to an ordinance of the city of Twin Falls, a sidewalk was constructed on said Block B, along Blue Lakes Boulevard. On November 12, 1926, plaintiff acquired title to said block, and proposes to erect a gasoline filling station thereon of the drive-in type. Application for a permit to build was made to the city clerk on October 12, 1926, which was lost or misplaced, and therefore never acted upon. Thereafter, on April 4, 1927, the application was renewed, and denied by the city council April 7, 1927. Plaintiff, challenging the constitutionality of certain ordinances, brought this action to restrain defendants from interfering with the building of said proposed gasoline filling station. Defendants plead *res adjudicata,* the statutes of limitation, and estoppel of plaintiff to question the constitutionality of the ordinances in question.

In November, 1920, the defendant city passed Ordinance No. 322, which reads as follows:

"Section 1. It shall be unlawful for any person or persons, corporation or corporations, to construct, maintain and operate within 500 feet of the grounds occupied by any public school building where children attend school at any time during the school year, a public service station where gasoline is sold and delivered to motor vehicles, which motor vehicles, in order to be served at such public service gasoline stations, have to cross a sidewalk or sidewalks in the City of Twin Falls.

"Section 2. That no permit shall be granted by the City of Twin Falls to any person or persons, corporation or corporations, for the purpose of constructing a building within 500 feet of any public school building, which building so to be constructed is intended to be used as a public service gasoline station.

"Section 3. Any person or persons, corporation or corporations, violating any of the terms and conditions of this ordinance, upon conviction therefor, shall be punished by a fine not exceeding $100.00.

"Section 4. An emergency existing, this ordinance shall be in force from and after its passage, approval and publication."

On April 4, 1927, the city of Twin Falls passed the following ordinance (No. 435):

"Section 1. That no permit required for the construction or alteration or the removal from one point to another of buildings within the city of Twin Falls, Idaho, as provided by Chapter V of the Revised Ordinances of Twin Falls, Idaho, shall issue except upon the favorable action of the council on the application for such permit.

"Section 2. All ordinances and parts of ordinances in conflict herewith are hereby repealed.

"Passed by the Council April 4, 1927.

"Signed by the Mayor April 4, 1927."

Washington School is situate on the opposite side of Blue Lakes Boulevard, in the block immediately north of Addison Avenue.

Upon sufficient evidence, the court found that the proposed station would not involve the crossing of any sidewalk in existence at the time of the application for permit; that Block B is in a residential district, and prior to its acquisition by plaintiff had been used for many years for residential purposes, but on account of its size, shape and the heavy special street improvement assessments levied against it, it has now become more valuable for business purposes; that the proposed building would be fireproof in character;

that school children pass the proposed service station at four fifteen to twenty minute intervals during opening and closing of the two daily school sessions; that forty to fifty per cent of the business of said station would be on Saturdays and Sundays and during the summer months when school was not in session; that no children pass on the Eleventh Avenue side where one entrance would be located, and not more than eight or nine on the average pass on the Blue Lakes Boulevard side where the other entrance is located, during any one interval; that neither side of said proposed station is passed by the usual or ordinary course of travel customarily used by children and pedestrians; that said proposed service station is not a danger to pedestrians; that there is no unusual amount of traffic surrounding it, and traffic would not be increased by its erection; that it does not constitute a fire or explosion hazard; that the city has provided no regulation for the storage of gasoline within 500 feet of any school building, and has not prohibited the sale or handling of gasoline at such location, except in the case of drive-in type service stations; that no odors from said proposed service station would be perceptible at the Washington School building or to the occupants of surrounding property, or for a distance of more than thirty or forty feet from said service station; that the operation of said service station on Block B would not create any noises which would extend to or hinder or annoy the occupants of Washington School or occupants of surrounding property; that said proposed service station, if conducted in the ordinary manner, would not be dangerous or detrimental to the occupants of Washington School or surrounding property, or the public, and would not in any manner affect the public health, morals, safety or general welfare of the inhabitants of said city; that the conditions found to exist were substantially the same when Ordinance No. 322 was passed in 1920; that the center of Block B would be approximately the center of the proposed service station, within a few feet of which

the petroleum products used therein would be stored and service rendered, and would be approximately 407 feet from the nearest entrance to the Washington School building, and approximately 319 feet from the nearest point of said school building; that the city has not prevented, nor attempted to prevent, by ordinance or otherwise, the location, within 500 feet of public school buildings, of any business involving the crossing of sidewalks by automobiles such as public garages, drive-in root-beer stands, battery-shops, tire-shops, or any other business which involves the crossing of sidewalks by automobiles; that the business of public garages, drive-in root-beer stands, battery-shops, tire-shops, and other businesses which involve the crossing of sidewalks by automobiles, in so far as such crossing is concerned are in the same class as drive-in gasoline filling stations; that the city has not prevented, or attempted to prevent, the location, within 500 feet of any public school building, of any other business ordinarily creating noises and odors, such as foundries, livery-stables, blacksmith-shops, laundries or other similar businesses; that the business of maintaining and operating a gasoline service station on Block B is not a dangerous, obnoxious or offensive business when conducted in the ordinary manner, nor dangerous to the public or pedestrians and school children, because of the crossing of the sidewalks for the purpose of ingress and egress, as said automobiles slow up; that the prohibitions mentioned are not reasonably necessary for the protection of the health, morals or safety of the inhabitants of the city; and that said Ordinance No. 322 was passed for the purpose of prohibiting the erection, maintenance and operation of gasoline filling stations only.

The court held that plaintiff has the right of ingress and egress across the sidewalks adjacent to Block B; that said ordinance prohibits such right, and is therefore depriving it of property without due process of law, in violation of the Fourteenth Amendment to the federal Constitution, and section 13, article 1, of the Constitution of the state of Idaho; that said Ordinance No. 322 is discriminatory,

denying plaintiff the equal protection of the laws in viola-
tion of the said Fourteenth Amendment to the federal
Constitution; that at all times plaintiff was entitled to
a permit to build its said proposed gasoline filling sta-
tion; that Ordinance No. 435, to the extent that it com-
mits the property rights of plaintiff to the arbitrary
will of the mayor and council, uncontrolled by the terms
of other valid ordinances, subjects the property rights of
plaintiff to the arbitrary will of the mayor and council,
ungoverned by any standard, and to that extent is void;
that in so far as said Ordinance No. 322 affects Block B,
it deprives plaintiff of vested property rights and property
without due process of law, and denies it the equal protec-
tion of the law, all in violation of the Fourteenth Amend-
ment to the federal Constitution and sec. 13, art. 1, of the
Constitution of Idaho.

It is first urged that plaintiff cannot be heard to
question the constitutionality of this ordinance because it
is not shown that its rights have been affected by it, even
if it should be shown to be unconstitutional. Defendants
argue that at the time the ordinance went into effect one
Bevercombe was the owner of Block B, and that the right
to attack its constitutionality accrued from that moment;
that if any right was taken from the block by the ordi-
nance, it was taken away the moment the ordinance be-
came effective, six years before plaintiff acquired title;
that the taking of the right was complete at that time,
and plaintiff took title to the block with full knowledge
of the ordinance, which was unattacked by anyone, and
therefore *prima facie* valid.

We cannot agree with appellants' contention that plain-
tiff has no interest in Block B sufficient to enable it to
maintain this action. Having purchased the property after
the passage of the ordinance, it stands in the place of its
grantor and his predecessors in the title, and obtained
by the conveyance to it all their rights with respect to the
property, among which was the right to erect a drive-in
gasoline filling station thereon, unless, in the absence of

estoppel, the same is prohibited by a valid ordinance. (See *Ignaciunas v. Risley*, 98 N. J. L. 712, 121 Atl. 783; *Cooper Lumber Co. v. Dammers*, 2 N. J. Misc. Rep. 289, 125 Atl. 325.)

The effect of the ordinance, if valid, was not to permanently deprive the owner of Block B of the right to erect a gasoline filling station thereon. It was a restriction depending for its vitality and validity upon the continuance of the ordinance and the continuance of the conditions therein mentioned. The ordinance might at any time be repealed *in toto,* or the restrictions limited to the erection of gasoline service stations within a less distance than 500 feet by subsequent ordinance, or the school might cease to be operated as such. If any of these contingencies occur, can it be said that because they did not exist at the time the ordinance was passed, the land was bound by the restriction for all time?

The record shows that until plaintiff purchased the property, it was used for residence purposes; that by reason of its restricted size, its shape and the heavy special assessments against it for special improvements, it is now too valuable for residence purposes. The mere fact that until these conditions arose, plaintiff's predecessors in interest used the property for residence purposes only is not an assent to the restriction placed upon the property by this ordinance that would preclude plaintiff from attacking its constitutionality. Acquiescence in an unconstitutional statute for many years will not render it valid. (12 C. J., p. 770, n. 38; 6 R. C. L., p. 65; *Hamann v. Heekin*, 88 Ohio, 207, Ann. Cas. 1915A, 1058, 102 N. E. 730; *Terrell v. Middleton*, (Tex. Civ. App.) 187 S. W. 367; *St. Paul Trust & Sav. Bank v. American Clearing Co.*, (D. C.) 291 Fed. 212 (230).) If the ordinance was invalid when passed in 1920, lapse of time, however long, will not render it valid, and the statutes of limitation cannot be invoked. (See *State ex rel Warson v. Howell*, 92 Wash. 540, 159 Pac. 777.)

Appellants cite *Brady v. Place*, 41 Ida. 747, 242 Pac. 314, 243 Pac. 654, to the proposition that if a constitutional

question is involved, that question must be raised at the earliest possible moment consistent with good pleading and orderly procedure, or else it is waived. An examination of that case and the authority cited in support thereof discloses that the rule laid down applies after the commencement of the action; that is, it must be raised in the case at the earliest possible moment consistent with good pleading and orderly procedure. The rule announced has no reference to the time of bringing an action in which a constitutional question may be raised.

Again, appellants urge that there has been a long delay in bringing the present action, and therefore the complaint fails to state a cause of action. *Ryan v. Woodin*, 9 Ida. 525, 75 Pac. 261, cited by appellants, was a suit to set aside a judgment, the court holding that the statute of limitations had run against the cause of action to set aside a judgment, and is not in point here. Nor is *Canady v. Coeur d'Alene Lumber Co.*, 21 Ida. 77, 120 Pac. 830, also cited by appellants. In that case, the village of Coeur d'Alene passed an ordinance vacating certain streets and alleys adjacent to land owned by defendant corporation upon condition that a certain mill and improvements would be erected and maintained thereon. This was done, and the company erected valuable improvements on its land and a portion of the vacated streets and alleys, and for more than five years maintained its sawmill business. Plaintiff sought to have the ordinance vacating the said streets and alleys declared void because of certain informalities in its passage. In denying relief, this court held that while plaintiff was shut off by said vacation from ingress and egress by the nearest route to her own lands, having with full knowledge of the ordinance permitted defendant to expend money in erecting improvements, etc., she was now estopped from attacking the ordinance, and that the statute of limitations had run against her cause of action. In the case at bar, the plaintiff or its predecessors have not stood by while any improvements have been made under the ordinance in question, nor has defendant been induced to change

its position to its disadvantage because of any act of plaintiff, nor have any rights of property sprung into existence by reason of this ordinance, bringing the case within the exception to the general rule. (See *Terrell v. Middleton, supra.*)

Appellants contend that the allegations of the amended complaint make no issue as to the constitutionality of said Ordinance No. 322, since the amended complaint lays all its allegations in the present; that the ordinance was passed in 1920, and the allegations of the amended complaint relate to conditions obtaining from 1926 to date of filing the complaint. We think this point is not well taken. Plaintiff alleged, among other things, "that said Ordinance No. 322 is unconstitutional and void, and its enactment was not, and is not now, required for the protection of public morals, health, or safety," etc., and proceeds to allege the present conditions as to traffic, liability to accident, annoyance from odors, noise, etc.

The court permitted testimony on the question as to whether a drive-in gasoline service station is a nuisance in fact, and of conditions as they existed in 1927, when the ordinance in question was passed in 1920. Notwithstanding the rule that there is no legal presumption that a state of things shown to exist at a particular time was in existence prior thereto (*State v. Gee*, 48 Ida. 688, 284 Pac. 845), "there is often a very strong inference as to a previous state of facts arising from proof of their subsequent state or condition, and this is the basis for the admission of evidence of subsequent condition, conduct, and statements." (9 Ency. of Evidence, p. 917; *McCormick & Richardson v. Joseph & Anderson*, 77 Ala. 236.) Of course, some circumstance operating in the interval may have been the source of the subsequent conditions, "and the propriety of the inference will depend on the likelihood of such intervening circumstances having occurred and been the true origin." (1 Wigmore on Evidence, 2d ed., sec. 437, p. 772. See 22 C. J., p. 92.)

The evidence complained of covered these points: That there was no increased fire hazard nor danger from explosions; that there was no offensive odor within the distance the school is located from the filling station; that the noise incident to the operation of cars entering and leaving the station did not tend to offend the hearing or interfere with school work; and that the traffic on the sidewalks was not of sufficient volume to render the operation of the service station at that point dangerous to life. The conditions might reasonably be inferred to have existed at the time of the passage of the ordinance. Gasoline has not changed in its inherent nature as to odor, explosive or volatile character; nor has the noise incident to the operation of motor cars changed materially since 1920. The fire hazard and liability of explosion remain practically the same. These conditions depend upon factors that are practically fixed, and can be as readily determined from their operation upon the senses to-day as if the time was fixed ten or twelve years back. The density of traffic on the sidewalks in Twin Falls may be reasonably inferred to be greater in 1927 than in 1920, there being evidence that the population of Twin Falls increased during that interim. If it be shown that there were no accidents to pedestrians or school children at drive-in service stations as near or nearer to schools where the traffic is equally dense than the proposed station is, that is evidence from which it might be inferred that at a prior time, when there were fewer school children and the traffic was probably less dense, since the population was less, there was no danger to pedestrians from the operation of such service stations.

■■ A municipal corporation possesses only such legislative powers as are conferred upon it by the Constitution, charter or general statute. (See *State v. Frederic*, 28 Ida. 709 (715), 155 Pac. 977.) Such powers may be expressly laid down in the charter or legislative act, or they may be necessarily inferred from powers granted.

The Constitution (art. 12, sec. 2) provides:

"Any county or incorporated city or town may make and enforce, within its limits, all such local, police, sanitary and other regulations as are not in conflict with its charter or with the general laws."

 There is no express authority in our codes for the enactment of an ordinance such as is under consideration here. We must therefore, to sustain it, look to the general police power, as inferred from the statutes granting powers to municipalities.

The defendant city is authorized to enact ordinances "to secure the general health of the city, and to prevent and remove nuisances" (C. S., sec. 3860, par. 4); promote the "welfare of the corporation and its trade," etc. (C. S., sec. 3948); "prescribe limits in which no dangerous or obnoxious and offensive business may be carried on" (C. S., sec. 3954); to "remove all obstructions from the sidewalks" (C. S., sec. 3960), and "regulate, prevent and punish the riding, driving and passing of . . . . any vehicle over, upon or across sidewalks or along any street of the municipality" (C. S., sec. 3962). We conclude that these sections of the code are sufficient to extend the police power therein granted to the general subject matter of the ordinance under consideration here.

 It is generally held that the business of conducting a gasoline filling station of the type under consideration, either in a business or residence district, is a lawful business. (42 C. J., p. 1304; *City of Electra v. Cross,* (Tex. Civ. App.) 225 S. W. 795.) A drive-in type gasoline filling station is not a nuisance *per se.* (42 C. J., p. 1304; note, 35 A. L. R. 95; *Gillette v. Tyson,* 219 Ala. 511, 122 So. 830; *Hanes v. Carolina Cadillac Co.,* 176 N. C. 350, 97 S. E. 162; *City of Des Moines v. Manhattan Oil Co.,* 193 Iowa, 1096, 23 A. L. R. 1322, 184 N. W. 823, 188 N. W. 923; *Howell v. Board of Commissioners,* (Ga.) 149 S. E. 779; *Indian Refining Co. v. Berry,* 226 Ky. 123, 10 S. W. (2d) 630; *Nagel v. Dorrington,* 202 Cal. 698, 262 Pac. 718.) And "whether a thing, not a nuisance *per se,* is a nuisance *per accidens* or in fact, depends upon its location and surround-

ings, the manner of its conduct, or other circumstances."
(*McPherson v. First Presbyterian Church,* 120 Okl. 40,
51 A. L. R. 1215, 248 Pac. 561.)

Where the legislature, in terms, by charter or
general law, confers upon a municipality the power to pass
ordinances of a specified and defined character, such dele-
gated power not being in conflict with the Constitution, an
ordinance passed pursuant thereto cannot be held invalid
because otherwise regarded as unreasonable. On the other
hand, "where the power to legislate on a given subject is
conferred, and the mode of its exercise is not prescribed,
then the ordinance passed in pursuance thereof must be a
reasonable exercise of the power, or it will be pronounced
invalid." (2 Dillon on Municipal Corporations, 5th ed.,
sec. 600; 2 McQuillin on Municipal Corporations, 2d ed.,
secs. 760, 761; *People ex rel. Busching v. Ericsson,* 263
Ill. 368, Ann. Cas. 1915C, 183, 105 N. E. 315, L. R. A.
1915D, 607.)

In determining the question of the reasonableness
or unreasonableness of a municipal ordinance, all the exist-
ing circumstances or contemporaneous conditions, the objects
sought to be obtained, and the necessity or lack thereof for
its adoption, will be considered by the court. (*Hawes v.
City of Chicago,* 158 Ill. 653, 42 N. E. 373, 30 L. R. A.
225; *Troy v. Village of Forest Park,* 318 Ill. 340, 149 N. E.
281.)

Whether or not an ordinance is reasonable is a
question of law for the court. (*Hawes v. City of Chicago,
supra;* 2 McQuillin on Municipal Corporations, 2d ed., sec.
766, p. 729.) There is always a presumption of its validity.
(2 McQuillin on Municipal Corporations, 2d ed., sec. 840,
p. 860; 43 C. J., p. 570, sec. 908.)

Whether the intended use by plaintiff is such that an
ordinary man would make of the premises, and whether the
use of plaintiff's right of access to its premises will cause an
unreasonable obstruction of public travel, are also questions
involved in determining whether the restrictions of this or-

dinance are reasonable. (*Tilton v. Sharpe*, (N. H.) 146 Atl. 159.)

Ordinarily, the courts will not inquire into the motives of the council in passing an ordinance legislative in character, as distinguished from administrative or ministerial. (*Moore v. Village of Ashton*, 36 Ida. 485, 32 A. L. R. 1512, 211 Pac. 1082.)

Plaintiff claims that its right of ingress and egress is violated by the restrictions of this ordinance.

"While the public generally may have no special or particular interest in the right of ingress to any particular lot owner's property, the lot owner has a very material and special interest in having the public reach his property and place of business . . . . It has been held by the courts that to cut off the right of ingress and egress would be to take the lot owner's property without due process of law." (*Village of Sandpoint v. Doyle*, 14 Ida. 749, 95 Pac. 945, 17 L. R. A., N. S., 497. See, also, *Knowles v. New Sweden Irr. Dist.*, 16 Ida. 217 (231), 101 Pac. 81.)

Access to a public way across sidewalks, subject to the right of reasonable regulation by the municipality, "is one of the incidents of ownership of land bounding thereon, and this right is appurtenant to the land, and exists when the fee of the way is in the municipality, as well as when it is in private ownership." (*Anzalone v. Metropolitan District Com.*, 257 Mass. 32, 47 A. L. R. 897, 153 N. E. 325. See, also, 13 R. C. L., p. 142; 44 C. J., pp. 943, 945.) And it is a vested right of which the lot owner cannot be deprived without just compensation. (*Howell v. Board of Commissioners, supra; Gulf Refining Co. v. City of Dallas*, (Tex. Civ. App.) 10 S. W. (2d) 151.)

The findings and conclusions of the trial court to the effect that Ordinance No. 322 imposes an unreasonable restriction upon plaintiff's property rights, amounting to a taking thereof without due process of law, is fully sustained by the evidence. The provisions of the ordinance, as applied to the facts and circumstances in the instant case, are clearly unreasonable and therefore invalid as applied to

plaintiff's Block B, and violative of the guaranties of the Fourteenth Amendment to the federal Constitution, and section 13 of article 1 of the Constitution of the State of Idaho.

Said Ordinance No. 322 is invalid for the further reason that it is discriminatory in that it does not apply to all businesses of the same class. Upon its face, the ordinance is designed to regulate the construction, maintenance and operation of gasoline service stations of the drive-in type only. If it is intended to regulate the sale of gasoline as a "dangerous" or "obnoxious" business, under C. S., sec. 3954, its provisions do not cover garages, stores or other places where gasoline is retailed by means of a curb pump, and the customer does not drive across the sidewalk. (See *City of Vincennes v. Marland Refining Co.,* (C. C. A.) 33 Fed. (2d) 427.) If the object sought relates to the regulation of driving vehicles across the sidewalk authorized by C. S., sec. 3962, it clearly discriminates in favor of those businesses whose patrons drive across the sidewalks to their place of business, such as garages, drive-in refreshment stands, etc. The municipality has the right to classify businesses, but in so doing it will not be permitted to make an "arbitrary distinction between different kinds and classes of business," where the conditions are similar. (2 McQuillin on Municipal Corporations, 2d ed., sec. 775, p. 754; *In re Snyder,* 10 Ida. 682, 79 Pac. 819, 68 L. R. A. 708; *State ex rel. McCue v. Sheriff of Ramsey County,* 48 Minn. 236, 31 Am. St. 650, 51 N. W. 112; *Board of Commissioners v. Orr,* 81 Ala. 308, 61 So. 920, 45 L. R. A., N. S., 575.)

Standing alone, Ordinance No. 435 provides that no permit shall issue for the construction, alteration or removal of any structure in the city of Twin Falls, except after favorable action by the city council upon an application for a permit. Without authority of any other ordinance prescribing definite and certain rules by which the right to a permit shall be ascertained, it commits the right to erect a structure to the uncontrolled discretion of the

city council. Such ordinances are generally held invalid. (42 C. J., p. 1306; *Bizzell v. Aldermen of Goldsboro,* 192 N. C. 348, 49 A. L. R. 755, 135 S. E. 50; *Slaughter v. Post,* 214 Ky. 175, 282 S. W. 1091; *Julian v. Golden Rule Oil Co.,* 112 Kan. 671, 212 Pac. 884. See *Porter v. City of Lewiston,* 41 Ida. 324, 238 Pac. 1014.)

Judgment affirmed. Costs to respondent.

Givens, C. J., and Budge and Lee, JJ., concur.

McNaughton, J., did not sit at the hearing and took no part in the decision.